(122 So. 886)

No. 29347.

Succession of MITHOFF.

May 20, 1929.

Dart & Dart, Louis C. Guidry, and Robert Ewing, Jr., all of New Orleans, for appellant.

W. J. Hennessey, of New Orleans, and Louise Louque Burton, for appellee.

THOMPSON, J. This is a controversy between two sisters of the whole blood over the disposition made by their mother of her property by a donation inter vivos and by a last will.

The mother, Mrs. Emma Mithoff, widow of Francis R. Cogswell, died in this city on July 31, 1926.

She was survived by two daughters, Mrs. Zulia Cogswell Lacy, residing in Virginia, and Miss Olive Cogswell, who resided with her mother in this city. There survived also two grandsons, issue of the marriage of a predeceased daughter, Lillian Cogswell Boone, who lived and died in Mississippi. The grandsons are not parties to this suit.

On May 17, 1924, something more than two years before her death, Mrs. Emma Mithoff made and executed a last will and testament before Francis D. Charbonnet, a notary public of this city. By this will the testatrix gave to her daughter Olive Cogswell all of the disposable portion of her estate (one-third) as an extra portion over and above the amount reserved to her by law. This daughter was also named as executrix with seizin and without bond: About a week before the execution of the will, Mrs. Mithoff made a remunerative donation to her daughter Miss Olive of certain bonds and stocks valued at about $11,000. This donation was passed before the same notary who executed the will.

The will was duly probated and ordered executed. An inventory was taken which showed the property of the estate to be worth about $64,000 exclusive of the bonds and stocks donated to Miss Olive.

Some five months after the probate of the will, the daughter residing in Virginia instituted suit against her sister Miss Olive to annul both the will and the remunerative donation, on the ground that at the time the instruments were executed Mrs. Mithoff was suffering from an aggravated case of senile dementia and insanity and was entirely without physical or mental capacity to make any valid will or donation; that she was incapable of dictating, and did not dictate, the will or the donation inter vivos.

After a trial on which considerable testimony was heard as to the mental and physical condition of Mrs. Mithoff before, at the time of, and subsequent to the execution of the will and donation, the trial judge found that the testatrix was competent to make the will and the donation and rejected the plaintiff's demand.

The case involves no disputed questions of law. It is conceded that if the testatrix at the time of making the will was of unsound mind and incapable of knowing what she was doing, then the will could not be sus-

tained as a valid disposition of her property. On the other hand, if she was possessed of sufficient disposing mental capacity at the time the two instruments were executed, then they are legal and valid even though it be shown that she suffered complete dementia before and after the making of the two donations.

Testamentary capacity is always presumed. In other words, every person is considered under the law to be of sound mind, and this presumption continues until destroyed by cogent, satisfactory, and convincing evidence. The degree of proof required to overcome the presumption of sanity and of mental disposing capacity may be likened to that required in criminal cases to rebut and overcome the presumption of innocence which the law creates in favor of a person on trial for a crime. This is, we think, a settled rule of which there can be no doubt.

The court, however, so far as we are informed, has never extended the rule to the extent of requiring the person attacking a will on the ground of insanity to establish that the testatrix was violently insane or was a raving maniac at the time of making the will.

There is quite a volume of testimony in this case, containing something over 400 pages, and the printed briefs cover some 230 pages devoted principally to a review of the testimony and liberal quotations therefrom. There were some 25 witnesses who testified in the case, some of whom had a direct interest in the result of the case and others who had no interest whatever. It would serve no useful purpose to quote any of the testimony or to refer to it in detail, and we have no inclination to do so. It is sufficient to say that we have read and re-read the testimony with a great deal of interest, and our conclusion is based upon what we conceive to be the salient facts established by the testimony.

The husband of Mrs. Mithoff and the father of the parties to this suit, Francis R. Cogswell, died in 1914.

He was a dealer to some extent in stocks and bonds and had accumulated an estate of approximately $72,000. This estate was divided between the surviving widow and her three daughters. After the death of the husband the widow with her community interest continued in business with her daughter acting as secretary until in 1918, when she gave to her daughter Olive a full power of attorney to manage her affairs and to transact all business for and on her behalf. The administration by the daughter seems to have been somewhat successful, as her mother's estate was increased to the extent of some twenty-odd thousand dollars under the daughter's administration.

In June, 1919, Mrs. Mithoff visited her daughter in Virginia, and while on this visit she experienced a fall, caused, it is suggested, though there is no definite proof of the fact, by a stroke of apoplexy or paralysis.

On her return home in course of time she became an invalid and had to be wheeled about in a chair, being unable by reason of her palsied condition to handle herself. There is no pretense that during the earlier stages of her affliction that she did not still retain her mental faculties. If at any time therefore prior to the year 1923 she had executed a will, it could not have under any view of the evidence been annulled on account of the want of testamentary capacity.

It may fairly be said therefore that a greater portion, if not all, of the testimony going to show want of mental capacity, covers a period beginning in 1923 and extending down to the death of the testatrix in 1926.

In 1923 a lady attendant was employed to wait upon Mrs. Mithoff and to attend to her temporal wants and necessities. This attend-

ant remained with the testatrix until some time in 1924 after the will was executed. Much reliance is placed upon the testimony of this witness because she said that Mrs. Mithoff's mentality was that of a child and that she had to treat her as a three months old baby; that she was not able to carry on a conversation about things in the outer world and would not call her by the name by which she wanted to be called; that she would look at an object and say that it hurt her; that she would not do any talking, but liked to have others around her, and she liked things to be pleasant; that sometimes she would answer you perfectly all right.

This witness admitted that Mrs. Mithoff told her she talked too much, that she commented on things to eat that she liked and those she disliked, that she demanded certain things be done, and wanted to see the attendant and others kept busy about the house. This condition of the testatrix, so the attendant said, remained the same and without change for about 18 months.

There were quite a number of neighbors and acquaintances of Mrs. Mithoff placed on the stand, practically all of whom testified that she did not talk much but was a good and patient listener; that she did not at times recognize her visitors and could not carry on a fluent conversation or speak a whole sentence at a time.

It is admitted, however, by some of these witnesses that at a birthday party in honor of Mrs. Mithoff in February, 1924, a short while before the will was made, Mrs. Mithoff was the center of attraction; that each one talked with her and brought her flowers and candy. One of the friends, Mrs. Addington, plaintiff's witness, said that she talked with Mrs. Mithoff for a while and that Mrs. Mithoff had her read a letter from her daughter Zulia aloud to the crowd, and which letter

was commented on by Mrs. Mithoff as to what Zulia was doing and was proud of it.

All of which tends to negative the contention that Mrs. Mithoff had completely lost her mind in 1923 or 1924, some three years prior to her death.

There is no doubt that Mrs. Mithoff was in her dotage at the time she made her will, being 78 years old; that she was a paralytic for several years prior to her death and was suffering from senile dementia, which developed to some extent about the time of making the will. It is said that such a mental condition is characteristic of extreme old age, and that while it is progressive it is very slow of progress in the early stages.

According to the testimony of two reputable physicians, the mind of Mrs. Mithoff was completely gone at a period fixed at about two weeks prior to her death. It is not shown how long this condition existed prior to her death.

It must be remembered, too, that the examination of the two physicians was had something over two years after the will was made. We are not convinced by the testimony in the record relied on by the plaintiff, nor was the judge below, that Mrs. Mithoff was suffering from such mental disease at the time she made the will as to render her incapacitated to direct such a disposition of her property as she desired.

The testimony introduced by the plaintiff would not justify the court in so holding.

Beyond this, however, the testimony of a number of intimate friends and neighbors of Mrs. Mithoff who had occasion to visit her frequently, the testimony of the notary who executed and the witnesses who attested the will, the attending family physician, and the minister of the Gospel who visited her and gave her spiritual comfort, all testify that Mrs. Mithoff, while enfeebled by age and a

paralytic sufferer, was sane and capable of expressing her wishes.

That she had no difficulty in reading and speaking, though her utterances were slow.

It is also shown that Senator Lougne, a reputable member of the bar of this city, was the legal advisor of Mrs. Mithoff; that he requested the notary to take the will of Mrs. Mithoff, and he was the attorney who presented and caused the will to be probated.

It is inconceivable that Senator Lougne would have advised the notary to execute the will and would have caused the will to be probated if the testatrix was of the condition of mind as contended by the plaintiff. And it is likewise inconceivable that the notary would have prepared the will and caused it to be read to the testatrix in presence of four witnesses, if the testatrix had been in such condition as pictured by counsel for plaintiff.

There is nothing unnatural and unreasonable in the disposition made in the will.

Two of the daughters were married and had lived separate and apart from their mother in another state. The single daughter, Miss Olive, remained with her mother. She attended to the business of her mother, lived with her and ministered to her daily wants, and looked after her physical comfort. It was perfectly natural, under such circumstances, for the mother to favor such a daughter over the others who had not exemplified their devotion by their acts.

The case is not entirely dissimilar from Succession of Jones, 120 La. 986, 45 So. 965, and Succession of Schmidt, 125 La. 1065, 52 So. 160, in each of which the will was sought to be annulled on the ground that the testatrix was a victim of senile dementia.

In each of the cases referred to the will was sustained.

The court below confined its judgment to the validity of the donation inter vivos and

mortis causa on the cause alleged. All other questions were left open for future determination.

For reasons assigned the judgment appealed from is affirmed.

O'NIELL, C. J., absent, takes no part.