**18 So.2d 500**

Succession of **LANATA.**

Nos. 37248, 37359.

April 17, 1944.

Rehearing Denied May 22, 1944.

See, also, 203 La. 981, 14 So.2d 785.

Ed J. de Verges, Joseph M. Jones, and Bert Flanders, Jr., all of New Orleans, for appellants.

Clarence Dowling, Chas. I. Denechaud, Sr., Chas. I. Denechaud, Jr., and Rudolph J. Weinmann, all of New Orleans, for appellees.

Gerald Netter, of New Orleans, for Leon Godchaux Clothing Co., Ltd.

HAMITER, Justice.

The primary question presented for determination in this litigation—one that is res novo in the jurisprudence of this State —is whether or not a formal judgment of interdiction ipso facto incapacitates the interdict to dispose of his property by donation mortis causa.

Two appeals bring this succession matter before us. In one of the proceedings (No. 37,248) Mrs. Emma Lanata Hermann, a sister of the decedent and testator, John Sidney Lanata, is appealing from a judgment that dismissed her suit attacking the will, the court having sustained an exception of no cause of action directed at the allegations of the petition. The other appeal (No. 37,359) is prosecuted by the mentioned sister and by other relatives of decedent from a judgment dismissing their several oppositions to the first provisional account of the testamentary executor.

While a minor about eleven years of age, decedent, John Sidney Lanata, inherited from his father approximately $100,000; and to administer this estate, one E. L. Fernandez qualified as his tutor and thereafter acted in that capacity.

On September 5, 1903, or the day following Lanata's twenty-first birthday, a brother and two sisters, one of whom was Mrs. Emma Lanata Hermann, petitioned the Civil District Court for the Parish of Orleans for his interdiction, they alleging "that said John Sidney Lanata, owing to infirmities, is incapable of caring for his person or administering his estate and should be legally interdicted, and a curator and under-curator appointed to him." The court, in considering this petition, heard the testimony of five witnesses, including that of a physician and also of the person sought to be interdicted; and on February 8, 1904, it ordered "that John Sidney Lanata be, and he is hereby, interdicted, and that the Hibernia Bank & Trust Company be appointed to take charge of his property and money interest". The court further ordered that E. L. Fernandez, the former tutor, be given the care and custody of the interdict.

The judgment continued in full force and effect until the interdict's death which occurred on December 19, 1942, a period of more than 38 years. And serving at that time as curator and under-curator, respectively, were the Hibernia National Bank in New Orleans and Sidney L. Otis.

In the meantime, on August 15, 1942, the interdict executed a nuncupative will by public act, naming Sidney L. Otis as the

executor, and making the following bequests:

| To St. Leo the Great Church | $ 500.00 |
| To Mrs. Edmee Fernandez, wife of Sidney L. Otis | 50,000.00 |
| To his sister, Mrs. Emma Lanata Hermann | 30,000.00 |
| To his nieces and nephews, the children of Olivia Lanata and Octave Blache, | 20,000.00 |
| To Loyola University | 10,000.00 |
| To Charity Hospital of New Orleans the residue of his estate. | |

On the second day after the execution of that instrument, the testator instituted suit to set aside the judgment of interdiction, alleging in his petition, among other things, that: "Your petitioner further shows that he is now fully capable of taking care of his person and of administering his affairs; that he is not now, nor has he ever been subject to a state of habitual imbecility, insanity or madness; that he is not a lunatic nor an idiot, nor is he, because of any infirmity, incapable of taking care of his person or of administering his estate."

His death, occurring on December 19, 1942, prevented a trial of the action.

In due course the will, on being presented for probate, was ordered registered and executed, and further the court confirmed Sidney L. Otis as testamentary executor and decreed the taking of an inventory. Following rendition of the probate judgment Mrs. Emma Lanata Hermann, on December 24, 1942, initiated one of the two proceedings now before us (No. 37,248), alleging for a cause of action as follows:

"That the decedent John Sidney Lanata, was interdicted on February 8th, 1904, in proceedings No. 71,459 of the docket of this court and has remained under interdiction until death.

"That decedent's mental condition has not improved since his interdiction but on the contrary had become worse, that he was incapable of making a will or of understanding the terms of said will; that for several years prior to making said will the decedent had been gradually failing in health and mind, that he had become more irresponsible than when he was first interdicted, that he could never attend to his business affairs and was always easily led and influenced by others, and that this condition became progressively worse in the latter years of his life.

"That the said will is entirely null and void for want of capacity of the said John Sidney Lanata, to make a will."

She prayed for judgment decreeing the will, as well as all proceedings resulting therefrom, to be null and void, and recognizing her as the owner, by inheritance, of an undivided one-half interest in and to decedent's estate.

After the suit was placed at issue through appropriate answers of those cited, a hearing was ordered. During the trial the plaintiff offered in evidence only the record of the interdiction proceeding (held in 1904); then she rested. Whereupon the defendant testamentary executor filed an exception of no cause of action. It had as its basis the failure of plaintiff to allege that the decedent was insane at the time he executed the will, with respect to which

exceptor urged that the mere judgment of interdiction did not deprive the interdict of testamentary capacity, and especially it did not do so in this particular case.

The district court, following the taking of the matter under advisement and giving it thorough consideration, sustained the exception of no cause of action; but it granted to plaintiff a lengthy delay for the amending of her petition so as to allege the existence of insanity when the will was executed. This privilege of amending was declined by plaintiff, she preferring to rest her demands solely and entirely on the judgment of interdiction. Her appeal to this court followed.

In the companion proceeding (No. 37,-359), to which reference is above made, the appeal was perfected by those opposing the executor's provisional account.

In reaching his conclusion relative to the attack on the will, the district judge, as shown by the written reason for judgment, first gave recognition to the well settled principle of law that in the absence of interdiction proceedings one who attacks a will on the ground of insanity must allege and prove that the testator was insane at the time of the will's execution. Then he remarked that there is no decision in our jurisprudence which passes upon the validity of a testament made while the testator is under interdiction because of insanity; and, in this connection, the observation is correctly made that in Succession of Reems, 134 La. 1033, 64 So. 898, a case apparently decisive of the question, the transcript lodged in this court discloses that the execution of the involved will occurred prior to the institution of the proceeding which resulted in the testator's interdiction.

Next, the district judge said that, "In this instant case, however, it is not necessary to determine what is the correct rule where the will is executed after a judgment of interdiction based on grounds of *insanity*. The interdiction proceedings in this case were not instituted under Article 389 of the Louisiana [Civil] Code which provides for interdiction on the ground of *insanity* but under Article 422 of the Code * * * ". (The latter article authorizes interdiction of persons whose incapacity is due to *any infirmity*). Following that pronouncement, he analyzed the testimony given by the witnesses in the interdiction proceedings held in 1904, and offered the comment: "Taking the evidence in the case as a whole, it is clear that Lanata at the time of his interdiction was not suffering from an 'unsound mind' or from 'an habitual state of imbecility, insanity or madness', and the evidence offered in support of the proceedings for his interdiction falls far short of the measure of proof required to annul a testament on the grounds of insanity. It is significant to note that while the prayer to the petition for interdiction asks for a decree 'interdicting said John Sidney Lanata, and decreeing him *mentally* incapable of caring for his person or administering his estate and property,' the judgment itself interdicted him but did not decree him *mentally* incapable."

Finally the judge concluded:

"For the foregoing reasons it is my opinion that a petition which alleges the

nullity of a will because of its execution during the interdiction of the testator on the grounds of *infirmity* as distinguished from insanity, does not state a cause of action.

"As the plaintiff has failed and declined to avail herself of the opportunity to amend her petition for the purpose of alleging unsoundness of mind at the time of the execution of the will, I have no alternative but to dismiss the suit, and judgment will be rendered accordingly."

Article 389 of the R. C. C. provides: "No person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, although such person shall, at times, appear to have the possession of his reason."

This codal provision is derived from Article 489 of the Code Napoleon, reading: "The major who is in a state of habitual imbecility, insanity, or madness, should be interdicted, although such person shall, at times, appear to have the possession of his reason."

Article 422 of the R. C. C. recites:

"Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.

"Such persons shall be placed under the care of a curator, who shall be appointed and shall administer in conformity with the rules contained in the present chapter."

The Code Napoleon contains no corresponding article; interdiction is author-

ized under that Code only when habitual imbecility, insanity or madness exists. The authority given in said R. C. C. Article 422 is traceable no further back than to the Louisiana Civil Code of 1808, wherein it was provided, under Article 29 thereof, that: "Not only lunatics and idiots are liable to be interdicted; but likewise all persons, who, owing to certain infirmities, are incapable of administering their persons and their estates, *as is the case with those who are deaf and dumb.*" This last clause, of course, was merely illustrative; however, it indicates that under the former law of this state "certain infirmities" would encompass physical disabilities.

It is important to notice that both Articles 389 and 422 of the Revised Civil Code of Louisiana (1870) are to be found under Title IX of Book I, the subject of which is: "Of Persons Incapable of Administering Their Estates, Whether on Account of Insanity or Some Other Infirmity, and of Their Interdiction and Curatorship."

Also within that book and title are Articles 400 and 401 which state respectively:

"[Art.] 400. The interdiction takes place from the day of presenting the petition for the same."

"[Art.] 401. All acts done by the persons interdicted from the date of the filing the petition for interdiction, until the day when the same is pronounced, are null."

These articles (400 and 401) strike with nullity all acts done by the persons interdicted from the time of presenting the petition until the judgment is pronounced. And from them it must be concluded as a

natural and obvious consequence, although not so declared in the articles, that all acts done after the judgment of interdiction and until it is legally cancelled are also null; a contrary conclusion would constitute a gross absurdity.

Further, we find that the nullity thus declared is not confined to the acts of one whose interdiction *is based on insanity;* no restrictive or qualifying words to that effect are employed. The provision simply is (Article 401): "All acts done by the persons interdicted * * *." Under these circumstances, and considering that Articles 400 and 401 are a part of the same book title and subject to which both Articles 389 and 422 belong, it must be said that persons interdicted under Article 422 of the R. C. C. because of *"any infirmity"*, are equally as incapable of doing the acts contemplated by Article 401 as are those whose incapacity on account of *insanity* is judicially decreed under Article 389.

Therefore, in deciding the primary question presented by the instant appeal, it is unnecessary, in our opinion, to determine on what ground the judgment pronouncing the interdiction of Lanata was based, i.e., whether because of insanity or of "any infirmity". In this respect we differ with the trial judge.

The judgment of interdiction, admittedly, was in full force and effect at the time Lanata executed his last will and testament; hence the assailed instrument is without effect, null and void, unless the conclusion is reached that it is not such an act of the interdict which the law of this state strikes with nullity.

In Book III, Title II, Chapter 2 (Of the Capacity Necessary for Disposing and Receiving by Donation Inter Vivos or Mortis Causa), of the Revised Civil Code of Louisiana, we find Article 1470 which states: "All persons may dispose or receive by donation inter vivos or mortis causa, except such as the law *expressly* declares incapable." This provision comes from Article 902 of the Code Napoleon, reading: "All persons may dispose and receive, either by donation inter vivos, or by testament, except such as the law declares incapable." Undoubtedly, much significance is to be attached to the word "expressly" found in our Article 1470, because it was not a part of the corresponding Article 902 of the Code Napoleon, as is above noticed. Also in said Chapter 2, but with no corresponding article in the Code Napoleon, is the following provision of Article 1472: "It is sufficient if the capacity of giving exists at the moment the donation is made." Further, we find in R. C. C. Article 1475, that, "To make a donation either inter vivos or mortis causa, one must be of sound mind." The French Code (Article 901), respecting this provision, recites: "To make a donation inter vivos or a testament, one must be of sound mind."

In subsequent articles of that book, title and chapter of our Code, certain incapacities concerning the making of donations mortis causa are expressly declared, one of which relates to the minor under 16 years of age. But it is particularly noticeable that in none of the declarations is an interdict mentioned as being incapable of disposing by will.

With reference to an interdict's contracting, however, there are express declarations in our law. In that portion of the Revised Civil Code which treats of the capacity of persons to contract is Article 1784, reading: "Persons interdicted can, in no case whatever, make a valid contract after the petition has been presented for their interdiction, until it be legally removed." Thereafer, in the same section, is Article 1788 which commences: "The contract, entered into by a person of insane mind, is void as to him for the want of that consent, which none but persons in possession of their mental faculties can give. It is not the judgment of interdiction, therefore, that creates the incapacity; it is evidence only of its existence, but it is conclusive evidence, and from these principles result the following rules * * *." The rules, 13 in number, are then listed.

Rules 5 and 6 of Article 1788 provide:

"5. That if the party die within thirty days after making the act or contract, the insanity may be shown by evidence, without having applied for the interdiction; but if more than that time elapse, the insanity can not be shown to invalidate the act or contract, unless the interdiction shall have been applied for, except in the case provided for in the following rule.

"6. That if an instrument or other act of a person deceased shall contain in itself evidence of insanity in the party, then it shall be declared void, although more than thirty days have elapsed between the time of making the act and the death of the party, and although no petition shall have been presented for his interdiction."

To be read in connection with these rules is R. C. C. Article 403, which states: "After the death of a person, the validity of acts done by him can not be contested for cause of insanity, unless his interdiction was pronounced or petitioned for previous to the death of such person, except in cases in which the mental alienation manifested itself within ten days previous to the decease, or in which the proof of the want of reason results from the act itself which is contested."

On reading these provisions together, the law appears to be that to nullify an act of a person after his death, on the ground of insanity, the act must have been done within 30 days and the mental alienation must have manifested itself within 10 days before the decease, unless previously his interdiction had been petitioned for or the act contains in itself evidence of the insanity. Obviously these principles can not and do not apply to a last will and testament, even though it be sometimes referred to as and termed an act. Often, in fact in most instances, wills are executed long prior to the mentioned 30 day period; and our jurisprudence is replete with decisions sustaining attacks on wills thus made where insanity was charged and the testator had not been interdicted.

Interesting is the case of Ducasse's Heirs v. Ducasse, 120 La. 731, 45 So. 565, in which this court considered the mentioned R. C. C. Articles 403 and 1788 and called attention to the distinction between contracts and testaments. In doing this it referred approvingly to and quoted from Aubert v. Aubert, 6 La.Ann. 104, wherein it was stated that testaments may after 30

days be attacked for insanity, but never contracts.

The Aubert case, in explaining the mentioned distinction, recites: " * * * This difference has its source in the consideration, that laws regulating the capacity to contract are in furtherance of the natural rights of man, and that all restraints upon that capacity are abridgments of his liberty. But all his rights die with him. The disposal of his property by will rests purely on arbitrary legislation, and is in derogation of the general laws regulating the devolution of property. Society cannot exist without the capacity to contract; but the power to dispose of property by will is not necessary to its well being."

Also, in the earlier case of Marie v. Alvart's Heirs, 10 Mart., O.S., 25, the court held that Article 16 of the C. C. of 1808, on which Article 403 of our present Code is founded, had no application to testaments; and, in doing so, it observed:

"The evident object of this article was the protection of alienees, from the rapacity of near relations of an insane person, who might neglect to have him interdicted, in order to induce purchases from him, with the view of causing them to be afterwards set aside.

"A donee, legatee, or instituted heir, needs no such protection; as he gives nothing, he cannot be injured."

Appearing to be, but not actually, in conflict with the holdings just discussed is our decision in Succession of Dahm, 167 La. 705, 120 So. 58. Therein the plaintiffs attacked, on the ground of insanity, the will of decedent and also transfers of certain property made by him. In affirming the district court's judgment, which sustained exceptions of no cause and no right of action and dismissed the suit, we quoted R. C. C. Article 403, and said: " * * * The deeds attacked are regular on their face. There is no allegation that deceased was interdicted, or that his interdiction was ever petitioned for, or that any proceeding to determine his mental capacity to manage his affairs was ever instituted. This suit was brought long after the death of the deceased."

From a careful reading of the opinion, particularly the above extract, it is evident that the author thereof gave consideration only to the attack made on the deeds. Supporting this statement is the fact that he cited with approval R. C. C. Article 1788 and the Ducasse case, discussed supra. Further, it is well to notice his comment that plaintiffs (appellants) "have not followed up the appeal or filed a brief in the case * * *."

■ That there is a vast distinction between a will and a contract cannot be seriously doubted. A will is dispositive; a contract promissory. A will is gratuitous; a contract requires consideration ordinarily. A will is revokable; usually the contract is irrevocable. A will is inoperative unless it is made in accordance with the statute regulating the execution of wills, and, as a general rule it has no legal effect until probated; these principles do not govern contracts.

■ Also inapplicable to testaments, as is the case with the discussed Article 403, is R. C. C. Article 402. This provides: "No act anterior to the petition for the

interdiction shall be annulled, except where it shall be proved that the cause of such interdiction notoriously existed at the time when the acts, the validity of which is contested, were made or done, *or* that the party who contracted, with the interdicted person, could not have been deceived as to the situation of his mind." (Italics ours.)

The emphasized word "or" should be "and", an error with respect to this having been committed in translating the French text of the Civil Code into English. See Louisiana Legal Archives Vol. 3, Part 1, Article 402. When this correction is considered it is clear that only matters of contract are contemplated by the article.

■ With the conclusion reached then that R. C. C. Articles 402 and 403 are not applicable to testaments, it would seem to ´follow, and we hold, that testaments are likewise excluded from the preceding codal provision, Article 401, which is the one that declares null all acts done by the persons interdicted. These three articles are in sequence, are to be found in the same section of the Code, and also refer to the identical acts of the persons to whom the interdiction pertains.

A view somewhat similar to this was entertained by the French Jurisconsul Merlin interpreting Articles 504 and 502 of the Code Napoleon, from which are taken Articles 403 and 401 of our present Code. He taught that although a judgment had pronounced the interdiction of a person, the proof of his lucid intervals, with reference to the making of a will, should not be repulsed; the theory underlying this teaching was that in as much as Code Napoleon

Article 504 did not apply to testaments then Article 502 should not be so applied. Most of the other French authorities, however, were not of that opinion.

But the writings of the commentators on the Code Napoleon are of little aid in determining the question before us. This is because of certain important differences existing between the pertinent articles of our Code and those of the French Code. For instance in the Code Napoleon (Article 502, sentence 1) it is provided that the interdiction becomes effective from the day of the judgment; under our law it takes place from the day of presenting the petition (Article 400). Further, Article 502 (sentence 2) of the French Code states that "All acts done after that time (day of judgment) by the interdict * * * * shall be null as a matter of right"; while R. C. C. Article 401 says, as before shown, "All acts done by the persons interdicted from the date of the filing the petition for interdiction, until the day when the same is pronounced, are null." Now in creating these differences the compilers of our Code, it seems to us, purposely and deliberately acted. They restricted the application of Article 401 to those acts of the interdict occurring between the date of the filing of the petition and that of the pronouncement of the interdiction, because at the time of compilation they were writing a supplementary provision into the section which treats of the capacity of persons to contract. This supplementary provision (Article 1784), not in the Code Napoleon, prohibits any contracting by persons interdicted until after the interdiction is legally removed.

R. C. C. Article 401 being inapplicable to testaments (and the discussed act of the Code's compilers is an added reason for holding it so), there is no law of our state which declares interdicted persons ipso facto incapable of disposing by donation mortis causa. We are not unmindful of Rule 13 of R. C. C. Article 1788 which states, "That, while the judgment of interdiction is in force, it is conclusive evidence of incapacity * * *." But this statement evidently pertains to matters of contract; it appears to be repetitious of a similar recital found in the first part of the article which refers to the contract entered into by a person of insane mind.

The judgment decreeing interdiction does not create an incapacity to act; it is merely evidence of the existence of that incapacity. It is conclusive evidence, as before shown, regarding the making of contracts; but in so far as testaments are concerned it is not. In the case of Succession of Connor, 165 La. 890, 116 So. 223, this court upheld a will executed by a person while in an insane asylum, but during one of his lucid intervals, he having been committed there under the provisions of Act No. 253 of 1910. What stronger evidence of insanity could be found than one's commitment to and presence in such an institution? To say the least, a presumption of his incapacity is thereby created. If the rebutting of that evidence and presumption be permitted and it was in the Connor case, such must be allowed here where the testator was affected by a judgment of interdiction, mere evidence of his incapacity.

Pertinent to this cause is the following extract taken from Page on Wills (Lifetime Edition) Vol. 1, Section 153, in support of which numerous decisions from this state and other states are cited, viz.: "Questions are occasionally raised as to the validity of wills made by persons under guardianship. Such persons may, and often do, lack the mental capacity to make a valid will; and, if such ability is lacking, the adjudication of idiocy, insanity or the like, and the appointment of a guardian will not add to the capacity of the person in question. But if a person has been adjudicated insane or idiotic or the like, and placed under guardianship or in an asylum, can he make a valid will if at the date of making such will, he possessed the requisite mental capacity; or does the existence of the guardianship conclusively establish his incapacity to make a will until such guardianship is determined by a decree of court? The courts have answered this question by holding that a person under guardianship may make a valid will if he has the testamentary capacity which is required by law in other cases, even though he is an inmate of an insane asylum."

■■ Therefore, as an interdicted person can make a valid will during a lucid interval, a petition that fails to allege insanity of the testator at the time of the assailed will's confection does not set forth a cause of action. And since no allegation of that kind is contained in the petition before us the exception was correctly sustained by the district court.

In the companion proceeding (No. 37,359), in which Mrs. Emma Lanata Hermann and other relatives of decedent appealed from a judgment dismissing their oppositions to the first provisional account

of the testamentary executor, appellants now question only the claim of Godchaux's Clothing Company for merchandise of the total value of $79.93 sold to the interdict. We find no error in the ruling of which complaint is made.

For the reasons assigned, the judgments are affirmed.

O'NIELL, C. J., concurs in the decree on the ground that the interdict was never insane, and was not interdicted for insanity, under the provisions of articles 389 and 401 of the Civil Code, but was interdicted because of some other "infirmity", under authority of article 422 of the Civil Code; hence there is no necessity in this case for deciding whether a person interdicted because of insanity is nonetheless legally capable of making a will during a lucid interval.