405 So.2d 513 (1981)
Succession of Felix Anthony RIGGIO.
No. 81-C-0931.
Supreme Court of Louisiana.
September 28, 1981.
Rehearing Denied November 16, 1981.
Iddo Pittman, Jr., Hammond, for plaintiff-applicant.
Timothy R. Higgins, Hammond, for defendant-respondent.
CALOGERO, Justice.
Relators in this Court, nine of the ten children of Felix Anthony Riggio, challenge the holding of the trial court, which was affirmed by the Court of Appeal, that their father possessed testamentary capacity on March 31, 1976, the date of execution of a statutory will.
Felix Anthony Riggio died in a nursing home in Tangipahoa Parish on May 29, *514 1978, at 89 years of age. Mr. Riggio had been married only once and his wife predeceased him. Ten children were born during the marriage and are the parties to the present litigation.
On April 6, 1979, Anna Riggio Cannizzaro, one of the relators herein, petitioned to be appointed administratrix of her father's estate, alleging that he had died intestate. She was appointed. On June 13, 1979, Mrs. Cannizzaro and the other relators filed suit against Peter Riggio, the remaining child. The suit alleged that Peter Riggio had already received his full share of the father's estate as a donation inter vivos when the father sold an acre of land and gave the proceeds to the son. Plaintiffs thus sought collation.
Peter Riggio filed an answer and a reconventional demand in which he alleged that he had possession of a last will and testament of his father dated March 31, 1976. The plaintiffs (defendants in reconvention) challenged the validity of the will, claiming that Mr. Riggio lacked testamentary capacity on the date of the will. The trial court found that the testator possessed the requisite mental capacity and ordered that a proper petition for the probate of the will be thereafter filed.[1] Although it reversed one portion of the trial court judgment not pertinent to this opinion, the Court of Appeal affirmed the aforementioned holdings of the trial court and remanded the case.[2] From that decision, plaintiffs applied to this Court and we granted a writ of certiorari to review the findings of the courts below. 399 So.2d 619 (La.1981).
Mr. Riggio suffered a stroke on October 10, 1975. As a result of the stroke he entered a nursing home and resided there until his death except for a brief interval when he was being treated by an orthopedic surgeon for a fractured hip. Dr. Thames, Mr. Riggio's family physician of long standing, testified concerning the health of his patient. According to the doctor, Mr. Riggio had recurrent mild strokes and developed what the doctor termed "chronic brain syndrome" where "he was not really himself." On cross-examination, the doctor stated that, although people with this condition do have a very few lucid intervals during which they may remember a person visiting, "five minutes later they don't ever know that you have ever been there."
Regarding depositions scheduled for March 31, 1976, during the succession proceeding for Mr. Riggio's deceased wife, Dr. Thames had certified that Mr. Riggio was "totally unable to care for himself and [was] physically and mentally incapable of giving a deposition or testifying in Court in any legal matter." The doctor signed this certificate on March 31, 1976, by coincidence the same date as the will being challenged in the instant suit.
In the trial court proceedings in the case before us, the doctor testified that he had no reason to change his mind concerning Mr. Riggio's condition on March 31, 1976: that he was still of the opinion that Mr. Riggio had been incapable of giving a deposition or testifying on that date. The doctor said that he did not know whether in a legal sense Mr. Riggio had the capacity to make a will on that date, but that it was his opinion that medically Mr. Riggio lacked the mental capacity to do so.
Although Dr. Thames stated that he did not know exactly when he had seen Mr. Riggio before March 31, 1976, he emphasized that he saw all nursing home patients at least once a month. He also stated that it was usually the latter part of the month when he visited the patients in the nursing home where Mr. Riggio was confined.
Mr. Riggio's daughter, Anna, testified that she had seen her father three times at the nursing home on March 31, 1976, and he was unable to recognize her. She further testified that her father did not mention making a will that day or that he was going to do so that day or that he was interested in making a will. On cross-examination, she admitted that previously she had stated *515 that her father retained his mental capacity, but explained that this statement was made while her father was still alive and that she did not wish to embarrass him by informing people of his deficient mentality. Additionally, Anna said that shortly before his death, over two years after the March 31, 1976, will in contest, her father expressed a desire to make a will and that she dissuaded him by explaining that a will was not needed because his property was clear of debt and his children would share his property anyway. To this recommendation, her father did not retort by advising that he had made an earlier will.
The will at issue left a two-thirds interest of the testator's property (the legitime) to be divided equally among his ten children. A one-third interest was bequeathed to the "grandson who bears my name, Felix Anthony Riggio." Opponents of the will introduced into evidence the suit of Mr. Riggio against a grandson, Felix Anthony Riggio, in which Mr. Riggio obtained a judgment voiding and cancelling a purported cash deed of his property to that grandson. The petition had alleged fraud and duress in the transaction. This grandson is the son of Peter Riggio who is the defendant in the instant suit. There is another grandson who is named Felix Anthony Riggio, son of one of Mr. Riggio's children who is aligned with eight of his brothers and sisters as plaintiffs in this case.
The proponents of the will offered no live testimony at the hearing. They did introduce into evidence an affidavit by the notary and one witness before whom the will was executed. This affidavit, however, does not address the testamentary capacity of Mr. Riggio. The affiants only state that the document in evidence is the will executed and that they are respectively the notary and witness on the document. The proponents of the will also offered into evidence, in support of their contention that Mr. Riggio had acceptable mental capacity, a deposition given by Mr. Riggio on March 22, 1978, almost two years after the date of the will under challenge. They point to the questions and Mr. Riggio's answers in the transcript of the deposition as evidence of soundness of mind on that day in March 1978. While this may not be indisputable evidence regarding sound mental capacity in March 1978, and certainly is not directly pertinent to soundness of mind on March 31, 1976, Mr. Riggio's responses in that deposition were pertinent and indicated a memory of past events.
"To make a donation either inter vivos or mortis causa, one must be of sound mind." LSA-C.C. art. 1475. Testamentary capacity is tested as of the moment at which the donation is made. LSA-C.C. art. 1472. Testamentary capacity is presumed and the burden of establishing the contrary is on the party attacking the will. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951). It is settled law that this presumption continues until destroyed by cogent, satisfactory and convincing evidence. Succession of Mithoff, 168 La. 624, 122 So. 886 (1929); Succession of Schmidt, supra. Obviously, it is because proponents of any will have a presumption of sanity going in, that opponents, in order to have their evidence preponderate, must bear the burden of establishing lack of testamentary capacity with clear and convincing evidence.
On the record as presented to us, we would be inclined to find that opponents of the will have carried the burden of proving by clear and convincing evidence that Mr. Riggio was not of sound mind on March 31, 1976, when he made the will. Probably the deciding factor in that determination would be the absence of testimony by the notary public and the two witnesses of the statutory will, the persons most likely to have a direct, and perhaps impartial, assessment of the testator's condition at the time of the confection of the will. Furthermore, it seems that proponents of the will should have presented the testimony of the notary and two witnesses on the will, if not because failure to call them raises a presumption that their testimony would be unfavorable (Fried et al. v. Bradley, et al., 219 La. 59, 52 So.2d 247 (1950), (on rehearing 1951); Succession of Yeates, 213 La. 541, 35 So.2d *516 210 (1948)), then at least to show that it was executed during a lucid interval.[3]
We decline, however, to make a definitive ruling concerning the mental capacity of the testator because of the possible confusion as to what issues were being tried. The matter before the court was a rule to remove the administratrix. Counsel for plaintiffs and the trial judge discussed concurrence of the parties to try all issues in the lawsuit. And, while defendant's attorney made somewhat conflicting responses, he did ultimately object to the proceedings.
Additionally, this case reaches us in an unorthodox posture. The will under contest was not and has not yet been probated. Article 2887 of the Code of Civil Procedure permits, in connection with the probate of a statutory will, proof by the testimony of the notary and one of the two witnesses in the form of an affidavit executed after the death of the testator and before a notary and two witnesses unless the court in its discretion requires the person to appear and testify orally. Furthermore, this provision does not apply to testimony with respect to the genuineness of the will that is judicially attacked. The import of that article applied to a case such as this is surely that the judge should require the testimony of the notary and witness or witnesses in open court before he determines to probate a will where the soundness of mind of the testator is at issue.
In this case, the Court of Appeal properly noted that the will had not been probated and therefore remanded for probate. Under these circumstances, it is certainly premature to have decided the issue as to the mental capacity of the testator. Additionally, an appellate court may render whatever judgment is just, legal and proper upon the record on appeal. LSA-C.C.P. art. 2164.
We believe, for all of these reasons, that justice is best served by remanding this case for probate of the purported statutory will of Mr. Riggio without prior final determination of his mental capacity on the occasion of the will's confection. That testamentary capacity, or lack thereof, can be determined in contradictory proceedings in connection with probate of the will.

Decree
For the foregoing reasons, we vacate the holding of the Court of Appeal to the effect that Mr. Riggio was of sound mind at the time of the confection of the March 31, 1976, will and remand the case to the trial court for further proceedings consistent with the views expressed herein.
VACATED AND REMANDED.
WATSON, J., dissents.
NOTES
[1] Other issues in the suit in the lower courts are not before us.
[2] 395 So.2d 361 (La.App. 1st Cir. 1981).
[3] Once the doctor stated that Mr. Riggio was incompetent, while admitting the possibility of lucid intervals, defendant should have rebutted with testimony of witnesses who could show that he was lucid.