417 So.2d 863 (1982)
SUCCESSION OF Virginia Vasques CATANZARO.
No. 12676.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied August 19, 1982.
*864 Jules J. Mumme, III, New Orleans, for appellant.
Ronald J. Favre, New Orleans, for appellant.
Before BARRY, BYRNES and WARD, JJ.
BYRNES, Judge.
This is an appeal from a trial court ruling that the parties seeking to nullify the last will and testament of decedent, by virtue of decedent's lack of testamentary capacity, have failed to sustain the requisite burden of proof. The judgment of the lower court declared the last will and testament of decedent dated October 15, 1969 to be valid. We affirm the lower court's decision.
The trial judge, in his reasons for judgment, upheld the validity of the October 15, 1969 will and we adopt those reasons and include them herein as follows:
"Evidence before the Court indicates that the decedent, Mrs. Virginia Marie Vasques Catanzaro, made several wills during her lifetime, including the three (3) that are before this Court. The testaments that are contested before the Court and upon which judgment is rendered are those dated: May 10, 1968, filed by Irvin Carbalan; June 23, 1969, filed by Myrl D. Fair; and a third dated October 15, 1969, filed by Annaise F. Touchard.
"It is clear under Louisiana law, as well as the jurisprudence, that `testaments are revocable at the will of the testator.' LSA-CC Art. 1690 (cases are too numerous to cite)
"Each of the testaments, before this Court, contained language expressly revoking all prior wills.
"Our Supreme Court declared unequivocably in 1927 that `a testator may revoke a will any time between confection thereof and his or her death', and this pronouncement continues as the law governing the making of successive wills to this day. Succession of Nelson, 163 La. 458, 112 So.2d 298 (1927).
"It is urged that since an Interdiction of the decedent was sought in September 1968 (See: CDC No. 483-112, filed Sept. 17, 1968), she was incapable of making a valid will subsequent to that date. However, this is clearly not the law in Louisiana. See: Succession of Lanata, 205 La. 915, 18 So.2d 500 (1944).
"Testamentary capacity is always presumed. This Court finds nothing in the testimony of any of the witnesses which would indicate that on October 15, 1969, the testatrix was incapable of revoking the will she made on June 23, 1969, and making a valid disposition of her property on the date of October 15, 1969. The fact that Mrs. Catanzaro frequently changed her mind may raise questions in the mind of an unsophisticated observer, but Mr. Carbalan who attempted to convince the Court that the testatrix lacked `mental capacity,' acknowledged that he and the testatrix exchanged letters during 1969. When taken as a whole, this Court came to the conclusion that there were several reasons why the decedent may have decided not to leave her property to Mr. Carbalan. As a matter of fact, this Court believes that the testatrix, like many persons of advanced years, felt that she should leave her property to the person who `was kind to her in her last days' and as her circumstances changed she changed her will.
"In order to overcome the presumption of `sanity' one must show by cogent, satisfactory and convincing evidence that the testatrix was incapable of dispositive intent. Succession of Brown, 251 So.2d 465 (La.App. 1st Cir. 1971), Succession of Dixon, 269 So.2d 323 (La.App. 2nd Cir. 1972), Succession of Bush, 292 So.2d 915 (La.App. 1st Cir. 1974)
"The burden of proof of `incapacity' is upon the `attacker' of the will. This burden was not met and the `attack' is rejected."
*865 The Supreme Court, in a further pronouncement, stated in the Succession of Riggo, 405 So.2d 513 (La.1981):
"`To make a donation either inter vivos or mortis causa, one must be of sound mind.' LSA-C.C. art. 1475. Testamentary capacity is tested as of the moment at which the donation is made. LSA-C.C. art. 1472. Testamentary capacity is presumed and the burden of establishing the contrary is on the party attacking the will. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951). It is settled law that this presumption continues until destroyed by cogent, satisfactory and convincing evidence. Succession of Mithoff, 168 La. 624, 122 So. 886 (1929); Succession of Schmidt, supra. Obviously, it is because proponents of any will have a presumption of sanity going in, that opponents, in order to have their evidence preponderate, must bear the burden of establishing lack of testamentary capacity with clear and convincing evidence."
Although the opponents of the will did indeed show that the decedent was somewhat impaired mentally at times, they did not carry the burden of proof required to overcome the strong presumption of sanity that must prevail in all cases concerning donations mortis causa. Decedent suffered from senile dementia of mild to moderate degree. Evidence given by other witnesses further shows that the decedent did not possess full mental facilities, but at times the decedent was quite lucid.
The attorney present at the drafting of the October 15, 1969, will testified that the testatrix did indeed possess, in his opinion, the requisite lucidity required to execute a will. It is well established law in this state that a decedent may make a will during a lucid interval after his interdiction. When determining whether the testamentary capacity existed at the time of making a will, one must look to Book 3, Title 2, Chapter 2, of the Civil Code entitled "Of the Capacity Necessary for Disposing and Receiving Donation Inter Vivos or Mortis Causas," and not to the Article dealing with contracting with the interdict. See Heirs of Oncale v. Clement, 411 So.2d 543 (La.App. 1st Cir. 1982). Therefore, while the fact that Mrs. Catanzaro did execute the will after her interdiction is certainly indicative of a possible absence of the lucidity required by a testatrix, standing alone, it is by no means determinative of her lack of testamentary capacity.
In conclusion, we find nothing in the record that would lead this court to believe that the trial judge committed manifest error in his interpretation of the facts, and in the absence of such a determination, we are bound to affirm the trial court ruling. Canter v. Koehring, 283 So.2d 716 (La.1973). Although the opponents of the will were able to paint a picture of an older woman who was no doubt feeble minded, they did not carry their burden of proof in showing that the will was not made during a lucid interval. Because of the opponents' failure to overcome the strong presumption of sanity we must affirm the lower court's decision.
AFFIRMED.