LABORDE, Judge.
This is an appeal from a judgment declaring an olographic testament of Madie Simmons Key, executed March 11, 1979, to be invalid for want of testamentary capacity. We affirm.
The trial court, in reasons for judgment which we adopt as our own, stated as follows:
“Madie Simmons Key died in Alexandria, Louisiana on March 15, 1983. She left a statutory will dated in 1961 and a [sic] olographic will dated March 11, 1979.
Both wills were filed for probate and oppositions to each were filed. Travis E. Funderburk, and his children were named as the legatees, in the 1961 will; Mrs. Exa Simmons Chevalier, along with her brother, Barney 0. Simmons were named as legatees in the olographic.
An opposition was filed to the petition for probate of the olographic will and to the petition for appointment of the Dative Testamentary Executrix. The trial was limited to, and revolved around, the opposition to the alleged olographic will. The principal ground for objection to it was that Mrs. Madie Simmons Key did not have testamentary capacity on the date that the will was written, March 11, 1979.
In Succession-of-Lyons, 452 So.2d 1161 (1984) the [Louisiana] Supreme Court stated;
‘The capacity to make a will is tested at the time the will is made. LSA-C.C. art 1472. To make a donation mortis causa, a person must be of sound mind. LSA-C.C. art 1475. The question is whether the testator understood the nature of the testamentary act and appreciated its effects. Succession of Moody, 227 La. 609, 80 So.2d 93 (1955). The burden of proving lack of testamentary capacity is upon the party alleging it. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951); Succession of Riggio, [405 So.2d 513 (La. 1981)], supra.
There is a presumption in favor of testamentary capacity. Succession of Mithoff, 168 La. 624, 122 So. 886 (1929); Succession of Lambert, 185 La. 416, 169 So. 453 (1936); and Succession of Riggio, supra. The proof required to overcome that presumption is disputed in the jurisprudence.'
After considerable discussion on the question of the required proof the Court stated-;
‘Strong policy considerations are also involved when testamentary capacity is disputed. As the court stated in Kingsbury v. Whitaker, supra:
“To wrest a man’s property from the person to whom he has given it, and to divert it to others from whom he has given it, and to divert it to others from whom he has desired to withhold it, is a most violent injustice, amounting to nothing less than post-mortem robbery, which no court should sanction, unless thoroughly satisfied ... that the testatory was legally incapable of making a will.”
32 La.Ann. 1055 at 1062-1063. These considerations require that a party alleging lack of testamentary capacity overcome the presumption of capacity by clear and convincing evidence.’
A great deal of testimony and evidence was produced on both sides of this question by the proponents and opponents to the March 11th will. The opponents of the March 11th will, Mr. Travis Funder-burk and his witnesses testified that Mrs. Key was completely without testamentary capacity. Their testimony and evidence indicated that Mrs. Key, a resident of the nursing home at the time, was forgetful to such an extent that she could not recognize her closest relatives. Mr. Funderburk had been administering her business affairs for a number of years because of her lack of mental capacity, in addition to her physical condition. Their testimony indicated that she did not know about her business affairs, *201 her properties, nor was she fully aware of her surroundings. The testimony of the proponents of the March 11th will was diametrically opposite to that of Mr. Funderburk and his witnesses. Their testimony indicated that Mrs. Key was alert, oriented, fully aware of her surroundings and circumstances, aware of current events. Their testimony indicated that they enjoyed frequent visits with her at which she was alert, oriented, aware of their presence and able to converse with them about current events, family matters and old times. The testimony of the proponents and opponents of this will is in diametric opposition to each other, to such an extent that it is irreconcilable.
Fortunately there is ample independent evidence upon which the Court may rely to reach a decision in this ease. The medical evidence produced by the opponents of the March 11th will indicates that Mrs. Key suffered from diabetes mellitus, arteriosclerotic vascular disease and senility. Mrs. Key was placed into the nursing home in December of 1977, where she remained until her death in 1983. Her primary treating physicians were Doctor’s [sic] Rufus H. Craig and Hubert Prevost, both of whom testified at the trial. Doctor Craig was of the opinion that because of Mrs. Key’s long standing cerebral arteriosclerosis and her physical conditions she would be unable to understand the nature of a will and would not know what she was doing. He based this opinion upon evidence of Mrs. Key’s forgetfulness, her anxiety and depression, coupled with bouts of hyperactive behavior, aggitation, lethargy and diabetes mellitus.
Doctor Hubert Prevost was of the same opinion. The basis of his conclusion was the menial and physical conditions which were described above. He admitted Mrs. Key to the hospital on June 14, 1978 because of a large ulcer of the right leg which was getting improper care. The ulcer came about when Mrs. Key shaved her leg and cut herself causing an infection. She continued to shave her legs and to worsen the situation despite being repeately [sic] warned not to do so. The doctor at that time felt that she was so senile and forgetful that it was going to be difficult to get her to cooperate because of her mental condition. This resulted in him having to do a skin graft in order to heal the wound. She was hospitalized from June 14th thru July 27th in a [sic] effort to heal this wound; the extended hospital stay being necessary because of her inability to cooperate with him and follow instructions. She was admitted to the hospital again in September 1979 with the same problem. Again the same complicating factors occurred; that is, Mrs. Key was shaving her legs with a razor, the wound got infected and because she would not follow the doctors [sic] instructions it became infected requiring hospitalization. At that time the doctor noted that she had trouble remembering anything as a result of her mental and physical conditions described above. She was admitted to the hospital on September 23, 1979 and discharged November 2, 1979; this extensive hospitalization being made necessary in order to cure her problem.
In addition to the doctor’s testimony the Court had the benefit of the testimony of the nursing home personnel as well as the nurses [sic] progress notes. In general the testimony indicates that Mrs. Key was completely lacking in any procedural capacity. The nurse’s notes of February and March 1979 are of particular importance in reaching this decision. On March 10, 1979 she reported that bugs were crawling all over her and the bed that she was sleeping in. On the 19th of March, some eight days after this will was written she reported that someone came into her room during the night beat her up and stole her pajama tops. On the 21st of March she was confused about where her clothes were and seeing bugs all over the room. .
*202 Taking all of the testimony in this case along with the physical evidence, it is my opinion that on March 11, 1979, Madie Key did not have the capacity to write the will which she wrote. The independent evidence is overwhelmingly clear and convincing to me that Mrs. Key could not understand what she was doing when she wrote the will of March 11th.
For these reasons judgment is rendered herein in favor of Travis Funder-burk and against Exa Simmons Chevalier denying the opposition to the petition for probate of the statutory testament, further ordering that the petition for the appointment of dative Testamentary Exe-cutix by Exa Simmons Chevalier be denied and ordering that the statutory testament of Madie Simmons Key dated December 11, 1961 be admitted to probate. All cost [sic] of this matter are assessed against Exa Simmons Chevalier.”
It is apparent from the foregoing that the trial judge was presented with diverse testimony. In Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir.1982), writ den., 429 So.2d 126 (La.1983), the court stated:
“The question of testamentary capacity is a question of fact; and the trial judge’s findings of fact, particularly those findings involving the credibility of witnesses testifying before him, are entitled to great weight. The trial judge’s conclusions as to the facts will not be disturbed unless clearly erroneous. Ar-ceneaux v. Domingue, 365 So.2d 1330 (La.1978); Brown v. Dunbar, 375 So.2d 148 (La.App. 2d Cir.1979); Succession of Smith, 261 So.2d 679 (La.App. 2d Cir. 1972).”
From our examination of the record we conclude that the trial judge, having the advantage of hearing and seeing the witnesses in determining credibility, was not manifestly erroneous in holding that the testator lacked testamentary capacity at the time of the making of the will.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Cost of this appeal are assessed against the appellant, Exa Simmons Chevalier.
AFFIRMED.