522 So.2d 1160 (1988)
The SUCCESSION OF Stella W. CAHN.
No. CA-8613.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Writ Denied May 6, 1988.
George O'Dowd, New Orleans, for defendant-appellant Mary Horde Edwards.
Vernon P. Thomas, New Orleans, for plaintiff-appellee Andrea Victor.
Before SCHOTT, WARD and ARMSTRONG, JJ.
SCHOTT, Judge.
This is a will contest provoked by Mrs. Andrea Victor, a niece of the decedent, Stella W. Cahn, on the ground that she lacked testamentary capacity when she wrote an olographic will on May 25, 1984. The trial judge declared the will invalid and the universal legatee under the will, Mary H. Edwards, has appealed. The issue is whether the opponent of the will carried her burden of proof to establish that the decedent lacked testamentary capacity when she wrote the will.
The decedent died in February, 1986 at the age of 81. She was a widow and had no children or other descendants. In previous olographic wills she had left her home on Willow Street in New Orleans to Mrs. Victor and another niece and she named appellant as residuary legatee and executrix. In the 1984 will she named appellant universal legatee and executrix and made no mention of the nieces. In each will she revoked all prior wills. In November, 1983 decedent had been interdicted.
Dr. Richard Roniger, a psychiatrist, had examined decedent in connection with the interdiction in October, 1983. He diagnosed her condition to be a mental illness called dementia, senile type, with moderate impairment of intellectual functioning. He stated that her organic brain syndrome and dementia resulted from the death of brain cells and could be classified as Alzheimer's disease. He felt that she was not capable of managing day-to-day affairs or making even minor decisions without help. Her condition was such that when questioned *1161 about her situation and her environment she would be correct on some but would also make a lot of mistakes; her judgment was impaired, she was easily confused, and she needed help in making decisions. But Dr. Roniger expressed no opinion as to whether or not she had the capacity to write a will.
Dr. Fernand Dastugue, an internist who treated the decedent from 1980 until her death, saw her on May 4, 1984 and diagnosed osteoarthritis, hypertension, situational depression, and organic brain syndrome. He described her condition in this fashion, "... she was an elderly lady ... able to converse reasonably well with me. Sometimes she would get things a little backwards. She had memory troubles, but mostly she complained a lot about her joints bothering her ... she didn't [always] volunteer information, but she always seemed to have a general grasp of the situation." He stated that she knew him, she was coherent, and she was able to carry on conversations although at times "she would get things wrong a little bit, but it wasn't really inappropriate."
When the decedent wrote her will on May 25, 1984, she did so in the presence of two witnesses, Mary Gordon and Louise Thibodeaux. Gordon was a friend of decedent's for over forty years. She testified that upon arriving at the decedent's house they exchanged greetings and the decedent told her and Thibodeaux that she wanted them to witness the writing of her will. She (the decedent) said, "I decided to give everything I own to Marie (Mary Horde)." Gordon asked her, "Everything?" and she answered, "Yes, all of it," and emphatically said, "Nobody is making me do this. I'm doing it on my own free will." Gordon testified that the decedent then wrote the will and passed it to her and Thibodeaux to sign it. Prior to this date, Gordon had often visited with the decedent in person and on the telephone and she was able to carry on a conversation.
Gordon further testified that she was asked to return to the decedent's house on May 30, 1984 so that the decedent could make an addition to the will. This consisted of the addition of a provision that the executrix would serve "with seizin and without bond". This was written, dated and signed by the decedent and copied from another paper after she told them she had something to add to the will. Gordon stated that the decedent did not copy from anything when she wrote the will on May 25 but did it "off the top of her head." Questioned by the court, Gordon stated that she never felt the decedent was mentally incompetent and that "she was totally lucid" when she wrote the will.
The other witness to the will, Louise Thibodeaux gave a similar description of decedent's condition and behavior when she wrote the will and the addition.
Mary Edwards, appellant, is referred to in the will by the decedent as her "foster daughter, Mary Horde Edwards". She testified that she went to live with the decedent and her family in 1926 when she (Edwards) was seven years of age, and the decedent always referred to her as her foster daughter. She stated that the decedent gave her the May 25, 1984 will in a sealed envelope and asked her to take it to her attorney. She did so and the attorney, upon examining the will, told her something needed to be attached to it. She reported to the decedent that the attorney recommended the addition to the will. Edwards denied having knowledge of the will's content.
The testimony of the witnesses called by the opponent did not establish that the decedent was incapable of writing her will. On the contrary, Mrs. Victor, who lived in the other side of the double owned and occupied by the decedent, stated that she carried on conversations with her. Alice Hilliard, a neighbor residing across the street from the decedent, testified that she always recognized her and carried on conversations with her. The other niece, Marcella Ogundelle, who resides in Maryland, testified that she visited the decedent in 1984 and she described their conversations in this way:
".... we talked about a lot of things. We talked about her illness, we talked about the children [Mrs. Ogundelle's].

*1162 We talked about me. We talked about her. I mean, we talked about a lot of things."
The trial court assigned reasons for judgment annulling the will as follows:
The Court finds as a matter of fact that decedent, Stella W. Cahn, was totally incapable of making a valid will on May 25, 1984. This incapacity existed not only because of the interdiction which declared her mentally incapable, but also because of the medical testimony which substantiated her deteriorated mental condition. The Court does not find that decedent had any lucid intervals sufficient to validate the will of May 25, 1984.
To make a donation one must be of sound mind, LSA-C.C. art. 1475; and it is sufficient if the capacity for giving exists at the time the donation is made. C.C. art. 1472. A party alleging lack of testamentary capacity must overcome the presumption of capacity by clear and convincing evidence which is something more than a mere preponderance of the evidence. Succession of Lyons, 452 So.2d 1161 (La.1984); Succession of McEwen, 466 So.2d 705 (La. App. 4th Cir.1985), writ denied 468 So.2d 574 (La.1985). The presumption of testamentary capacity continues until destroyed by cogent, satisfactory and convincing evidence. Succession of Riggio, 405 So.2d 513 (La.1981). That the decedent had been interdicted prior to writing her will is not determinative of lack of testamentary capacity on her part. Succession of Catanzaro, 417 So.2d 863 (La.App. 4th Cir.1982). When the will under attack is an olographic will, the will itself is the best evidence of testamentary capacity if it is sensible and judicious. Succession of Franz, 232 La. 310, 94 So.2d 270 (1957).
The appearance and content of the will supports a conclusion that it was sensible and judicious. It is written clearly and legibly and compares favorably in appearance to the wills written in 1980 and 1974. Mary Edwards was very close to the decedent practically all of her life. In both previous wills she was named residual legatee and executrix so the decision to name her the universal legatee in the 1984 will seems quite logical. That the decedent wrote, dated and signed the will "off the top of her head" according to the witness, Gordon, goes far to establish that she knew exactly what she was doing. There is no evidence to support the opposite conclusion.
Even when Dr. Roniger's testimony is considered in the light most favorable to the opponents' case it does not support the conclusion that the decedent did not have testamentary capacity when she wrote the will. A comparison of Dr. Roniger's testimony with that of the physician in Succession of Riggio, supra (which involved a statutory, not an olographic will) is most helpful. There the physician testified with respect to a deposition given by the decedent on the same day he wrote a contested will that he was "totally unable to care for himself and [was] physically and mentally incapable of giving a deposition or testifying in court in a legal matter." This physician also expressed the opinion that from a medical point of view the decedent lacked the mental capacity to make a will on the date he wrote it. On the basis of this evidence Justice Calogero in a footnote, 405 So.2d at 516, remarked that in the light of the physician's testimony, the defendant should have rebutted with the testimony of witnesses who could show that the decedent was lucid. In the instant case, despite the absence of medical testimony which would make it unlikely that our decedent was lucid when she wrote the will, the witnesses for the appellant who were with the decedent at and near the time of the will's confection unanimously support the conclusion that she was lucid when she made it.
Once again we acknowledge one of the cardinal rules of appellate review that the factual findings of the trial court are entitled to great weight and his interpretations of and conclusions from those facts will not be disturbed on review in the absence of manifest error; and these rules apply in a will contest as in any case. Succession of Catanzaro, supra. But in the present case we are compelled to conclude that the trial court committed manifest error in finding that the decedent was "totally incapable" *1163 of making her will and was incapable of "lucid intervals" on the day she did it. As we have already shown no evidence supports these conclusions.
Furthermore, and perhaps of greater significance, the reasons for judgment clearly show that the trial court committed legal error in failing to attach significance to the fact that this was an olographic will, finding that she had to be incapable of making a will since she was interdicted, and failing to impose on the opponent the burden of proving her incapacity at the time she wrote the will by clear and convincing evidence.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of defendant, Mary Horde Edwards, and against plaintiff, Mrs. Andrea Victor, dismissing her suit at her cost.
REVERSED AND RENDERED.