292 So.2d 915 (1974)
Succession of George BUSH.
Mrs. Audrey H. BOURGEOIS, Plaintiff-Appellant,
v.
Mrs. Laura Quave HANO, Defendant-Appellee.
No. 9745.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
Writ Refused May 31, 1974.
*916 Iddo Pittman, Jr., Hammond, for plaintiff-appellant.
Howard R. Fussell, Covington, for defendant-appellee.
Before BLANCHE, TUCKER and VERON, JJ.[*]
BLANCHE, Judge.
A petition was filed by Mrs. Audrey H. Bourgeois, niece of decedent George Bush, wherein she presented for probate an olographic will dated and signed by decedent on December 28, 1964, and prayed that she be confirmed as testamentary executrix thereunder. The testator, George Bush, died of a self-inflicted gunshot wound, at the age of eighty-seven years, on July 7, 1972. A petition was also filed by Mrs. Laura Quave Hano, the estranged wife of decedent's nephew with whom he was living at the time of his death, requesting probate of a statutory will drawn in accordance with the provisions of LSA-R.S. 9:2442, dated and signed by testator on July 13, 1971, and asking that she be confirmed as testamentary executrix under the later will. In the 1964 will the testator bequeathed a forty-acre tract of land to Mrs. Bourgeois and a ten-acre tract of land plus $1,000 to Mrs. Hano. In the 1971 will the testator reversed the bequests and bequeathed the ten-acre tract to Mrs. Bourgeois and the forty-acre tract to Mrs. Hano. Mrs. Bourgeois attacked the statutory will on the basis of lack of testamentary capacity. Following a pre-trial conference at which Mrs. Hano set forth the grounds of her opposition to Mrs. Bourgeois' attack upon the 1971 will and named the persons she intended to call as witnesses in support of the 1971 will, Mrs. Bourgeois filed a supplemental and amending answer to Mrs. Hano's petition for probate of the 1971 will, alleging for the first time that the 1971 will was not valid because it was not executed according to the pertinent Louisiana statutes, and in particular *917 that it was not read to nor declared by the testator to be his last will and testament. Neither party seeking to probate the respective wills of the testator questioned the validity of the olographic will of 1964. Mrs. Hano claimed merely that it had been superseded by the statutory will of 1971. She prayed in the alternative that if this latter will be found invalid that the 1964 will be recognized as valid and that she be recognized as a legatee under it. Counsel for both parties stipulated to this effect.
Upon trial the vast bulk of the testimony of most of the witnesses was directed toward the testamentary capacity of the decedent George Bush, and the trial judge ruled in favor of the validity of the 1971 statutory will. The opponent to this will, Mrs. Audrey H. Bourgeois, has appealed, addressing herself on appeal principally to the question of the proper execution of the 1971 will; however, she alleges the following grounds of error:
"I.
"THE TRIAL COURT WAS IN ERROR IN FINDING THAT THE DECEDENT, GEORGE BUSH, HAD TESTAMENTARY CAPACITY ON JULY 13, 1971 THE DATE ON WHICH HE EXECUTED THIS STATUTORY WILL.
"II.
"THE TRIAL COURT WAS IN ERROR IN HOLDING THAT THE STATUTORY WILL HAD BEEN PROPERLY PROVED AND WAS EXECUTED IN ACCORDANCE WITH THE STATUTORY PROVISIONS."
In Louisiana testamentary capacity is always presumed until the contrary is affirmatively established by satisfactory and convincing evidence. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951). Testamentary capacity is tested as of the time that the will was made, LSA-C.C. Art. 1472; Stewart v. Branch, 250 So.2d 474 (La.App. 1st Cir. 1971), and the burden of proving lack of testamentary capacity at the time that the will was executed rests upon the party alleging it. Woods v. Society for Propagation of Faith, 251 So. 2d 438 (La.App. 1st Cir. 1971), writ refused, 259 La. 897, 253 So.2d 221. The degree of proof required to overcome the presumption of testamentary capacity has been held by the jurisprudence of this state to be similar to that required to rebut and overcome the presumption of innocence in favor of a person being tried for a crime. Succession of Brown, 251 So.2d 465 (La. App. 1st Cir. 1971).
Decedent had been in a progressively deteriorating condition for some years prior to his suicide and prior to his testation in 1971. He suffered from leukemia, arteriosclerosis, infections of various kinds, thrombophlebitis, and other ailments associated with old age. He had had a leg amputated and was receiving welfare assistance at the time of his death. Despite his physical disabilities the evidence preponderates that decedent George Bush was possessed of testamentary capacity at the time that he made his statutory will in 1971.
As an expert medical witness the opponent to the 1971 will presented Dr. Maurice J. Duplantis, a longtime general medical practitioner in the Covington-Madisonville area who had been the testator's treating physician from time to time. He testified particularly to a three-day episode in November, 1970, in which the testator had been under his care at the St. Tammany Parish Hospital and described his condition as follows:
"He became rather confused, refused to take any medicine, got rather hostile with everybody and it was requested of the family that they remove him from the hospital because he wasn't in any serious condition of his life and he was disrupting the entire hospital at that time." (Record, p. 66)
*918 Dr. Duplantis testified also that in his opinion the testator's mental condition was such that he could not have the mental capacity to make a will. Between this three-day period of extreme emotional distress accompanied by physical illness and the time that his will was confected eight months later Dr. Duplantis did not see the testator again. In fact, he did not see him again until after his death more than a year and one-half later. Dr. Duplantis also admitted that he had seen the testator at times when he was not confused.
Both of the physicians who had occasion to treat the testator in the last months of his life, Dr. Merlin H. Allen and Dr. P. J. Demarie, Jr., who treated him on February 4, 1971, and approximately March 26, 1972, respectively, testified emphatically that the testator was not confused or disoriented and that his mental status was well within normal limits. They found him competent to handle his own affairs and to make rational judgments.
Mrs. Carolyn White, a case worker for the Louisiana State Department of Welfare who had occasion to make an hour's visit with Mr. Bush in June, 1972, testified that she had no reason to doubt his competence and found him quite rational. At least five other witnesses testified to this same effect. More importantly, however, Mr. James T. Burns, an esteemed member of the Louisiana and St. Tammany Bar Associations who had been practicing law for over fifty years and who had known Mr. Bush almost that long, testified that he talked to Mr. Bush while his will was being typed and found him completely rational. He testified as follows:
"A I will answer it this way: Based on his physical appearance, his conversation with me, in the light of his previous conversations over the past forty years or whatever it is, I would say that there was no difference in his mental capacity that day as compared to any other day that he ever had been in my office.
"Q Did he talk and act rationally and reasonably in your opinion?
"A I have already said that he did; otherwise, I would not have executed his will. Rationally and reasonably." (Record, p. 111)
In grounding his decision principally upon the testimony of Mr. Burns, the trial judge opined as follows:
"Mr. Burns was state representative for one term, was the district attorney of this judicial district for four terms, and is presently serving as a delegate to the State Constitutional Convention. He testified that he had known the decedent since 1931 and that he had seen him many times over the years and that they had been associated together in political campaigns. Mr. Burns was adamant in his statement that Mr. Bush did possess capacity on the date that he drew the will in 1971, and he stated that had he had any doubt about the capacity of the man he would not have drawn the will. He testified concerning the fact that Mr. Bush came to his office, told him that he wanted to make some changes in his will. Mr. Burns dictated the changes or dictated the form of the will to a stenographer; he and Mr. Bush visited while the stenographer was preparing the will, and that after the will was completed the will was brought to him and to Mr. Bush, and in the presence of the two secretaries who signed as witnesses he read the will to Mr. Bush and Mr. Bush declared that he intended that to be his last will and testament.
"This was not a casual client who happened to come in off of the street asking an attorney to draw a will, but it was a man whom Mr. Burns had known for many years. Mr. Burns testified that Mr. Bush's behavior on the day in question was no different than it had been on previous occasions during the years.
"It is obvious to the Court that Mr. Bush was somewhat of an interesting *919 character * * *, but none of this is sufficient to allow a Court to reach the conclusion that the man was not of a sound mind when he made his will." (Written Reasons for Judgment, Record, pp. 39, 40)
Witnesses testifying against the testamentary capacity of Mr. Bush were principally collateral relations who had seen him infrequently in his last years. The crux of their testimony was to the effect that Mr. Bush was irascible, difficult to get along with, and afflicted with many of the symptoms of old age. Apparently he was getting hard of hearing and had to be shouted at. He preferred to talk about "the good old days" and lamented his progressive deterioration, etc. One of these collateral relations based his testimony as to Mr. Bush's lack of testamentary capacity on Mr. Bush's threats to commit suicide. None of these witnesses, alone or together, presented testimony, however, which was sufficient to overcome the strong presumption in favor of the testamentary capacity of Mr. Bush. We agree with the trial judge in his holding that the evidence in this case is overwhelmingly in support of the testamentary capacity of decedent Mr. Bush.
Appellant's attack upon the form of Mr. Bush's last will and testament has even less merit than her attack upon Mr. Bush's testamentary capacity. In paragraph three of her supplemental and amending answer opponent alleged generally that Mr. Bush's will was not executed according to the statutes of Louisiana pertaining to that particular type of will and specifically "that said testament was not read to nor declared by the testator as being his last will and testament." The pre-trial order reflects that opponent merely complained generally that Mr. Bush's statutory will was not executed properly in accordance with statutory requirements. The record contains very little testimony on this point and the trial judge did not even mention it in his reasons for judgment.
Article 2887 of the Code of Civil Procedure requires merely that "[a] testament confected in accordance with R.S. 9:2442 must be proved by the testimony of the notary and one of the subscribing witnesses, or of two of these witnesses, that it was signed by the testator." (Emphasis supplied) It was never alleged that the testator did not sign his will, and no evidence was adduced to seek to prove that he did not sign it. In fact, the positive testimony of Mr. Burns, quoted supra, clearly attests to the testator's having signed his will. Even Mrs. Bourgeois, the secretary who testified, clearly stated that she saw Mr. Bush sign his will. Their testimony on this point was never questioned. The requirement set forth by Article 2887 of the Code of Civil Procedure for the proof of a will drawn under R.S. 9:2442 is amply satisfied. All other technicalities of confection so assiduously urged by counsel for appellant as grounds of error are of no moment and cannot constitute legal issues to be considered in reviewing the decision of the trial judge.
For the foregoing reasons, the judgment of the trial court is affirmed, at appellant's cost.
Affirmed.
NOTES
[*] Due to the death of Judge TUCKER prior to rendition, this opinion is rendered unanimously by BLANCHE and VERON, JJ.