LOBRANO, Judge.
Lawrence Orlando, the testator in this case, died on May 14, 1979. On May 16, 1979, a purported testament of the decedent was admitted to probate and recorded in ex parte proceedings. The testament was dated April 13, 1979.
On June 7, 1979, August J. Franzella, Antoinette Orlando Molay, Marie Orlando Timphony and Antoinette Orlando Muscle filed a suit to annul, the probated testament. The petitioners alleged that the formalities for the execution of a nuncupative testament by public act were not complied with. They further alleged that at the time of the execution of said testament the testator was physically and mentally disabled and that his disability was of such a nature that it was impossible for him to understand or properly comprehend the execution of a last will. Made defendants in the suit were Lorenzo Loria, Vita Loria and Josephine Orlando Loria, all legatees of the decedent’s last will and testament.
After trial on the merits, the Court rendered judgment in favor of the Succession of Lawrence Orlando and its duly appointed representative, Lorenzo Loria, and against the plaintiffs dismissing their suit to annul the testament of Lawrence Orlando. From said judgment, plaintiffs have perfected this appeal.
Articles 1578 and 1579 of the Louisiana Civil Code establish the formal requirements for the writing of a nuncupative will by public act. These formalities are as follows:
1) The will must be dictated by the testator to the notary in the presence of three witnesses residing in the place *561 where the will is executed or of five witnesses not residing in the place;
2) the will must be written by the notary as it is dictated;
3) the will must then be read to the testator in the presence of the witnesses;
4) there must be no interruptions or turning aside to other acts;
5) the testament must be signed by the testator or, if he cannot sign or does not know how to write, express mention of this fact must be made in the will;
6) the testament must be signed by the witnesses; or at least by one of them for all, if the others cannot write;
7) express mention of the accomplishment of these forms must be made in the testament.

La.C.C. Articles 1578 and 1579

Appellants do not dispute that Mr. Herman, the notary, assiduously complied with all the formalities listed above. Their attack is based on testimony which indicates that Mrs. Búcaro, a witness, translated a word or phrase from English into Italian for the decedent’s benefit.[1] Appellants contend that this translation in a foreign language vitiates the testament. We disagree.
The applicable law on this issue is found in Succession of Centanni, 142 So.2d 636, (4th Cir. 1962) wherein we stated:
“The inability of a necessary witness to a nuncupative will by public act to understand either the language in which the will is written or the language in which the same is dictated renders the will null; and such a will is also null where the testator does not understand the language in which the notary wrote and read the will. Debaillon v. Fuselier, 159 La. 1044, 106 So. 559; Lataprie v. Baudot, 152 La. 177, 92 So. 776; Succession of D’Auterive, 39 La.Ann. 1092, 3 So. 341; Gonzales v. Gonzales, 13 La. 104.
The rationale of these cases is especially well expressed in Dabaillon v. Fuselier, supra, at page 1048 of the Louisiana eitation and at page 561 of the Southern citation as follows:
‘The decisions maintaining that a witness to a nuncupative will by public act is incompetent if he does not understand the language in which the will is dictated, or if he does not understand the language in which the will is written, are founded, not upon any express requirement of the Code with regard to the competency of witnesses, but upon the obvious and substantial reason that a witness to a nuncu-pative will must be able to compare what he hears the notary read to the testator with what he has heard the testator dictate to the notary. For the same reason — if not for better reason — the testator must be able to compare what the notary reads to him with what he has dictated to the notary. There is no opportunity for such comparison when the notary, having written the will in a language other than that in which it was dictated, translates it back into the language in which it was dictated, and thereby merely repeats to the testator what he dictated.’ ” at p. 638
In the instant case the testimony clearly reflects that the will was dictated by Mr. Orlando in English and taken down by Mr. Herman, the Notary, in English. The testator, notary and the witnesses all spoke and understood English. It appears from the record that Mr. Orlando requested that Mrs. Búcaro, a witness, translate several words and phrases from English into Italian for the purpose of insuring that he, Mr. Orlando, was expressing correctly what he wanted to say and that what Mr. Herman was writing conformed to his testamentary intentions.
After the translation took place, the notary read that portion of the will back to the Testator in English and Lawrence Orlando stated that he understood the English, and that what he heard the notary read was in fact his true wish and direction.
Code of Civil Procedure Article 2933 provides that the plaintiff has the burden of *562 proving the invalidity of the testament. The proof of noncompliance with the formalities required in executing a nuncupa-tive will by public act must be peculiarly strong to overcome the presumption in favor of its validity. Succession of Smith v. Domangue, 297 So.2d 717 (1st Cir. 1974).
It is well established that the trial judge is vested with great discretion in assessing whether witnesses to a testament or the testator himself possess a sufficient degree of proficiency in the language utilized. We find no manifest error in the trial judge’s conclusion as to the proficiency of the testator and witnesses in the English language. Furthermore we hold that the mere discussion of a phrase or thought of the testator in a foreign tongue then translated into English by a disinterested witness, and read back to him in English does not nullify the will.
Appellants second argument is that at the time the will was executed the testator was physically and mentally disabled to the point that he lacked the testamentary capacity to execute a valid will. Our jurisprudence defines testamentary capacity as the possession of one’s mental faculties to the extent that the testator has full knowledge and understanding of the import and effect of his action. The testator must be legally sane or experience a lucid interval throughout the period required to confect the testament. Succession of Herson, 127 So.2d 61 (La.App. 1st Cir. 1961).
Testamentary capacity is always presumed and the burden is upon the party attacking the will to prove that at the time the will was drawn, the testator was not sufficiently sound of mind to fully understand the nature of the testamentary act and appreciate its effect. Artigue v. Artigue, 210 La. 208, 26 So.2d 699 (1946) The test in determining testamentary capacity is whether such capacity existed at the moment the will was made. Cornmeir v. Myers, 223 La. 259, 65 So.2d 345 (1953) “The degree of proof required to overcome the presumption of testamentary capacity is similar to that required to rebut the presumption of innocence which the law creates in favor of the accused in criminal cases.” Succession of Collins v. Hebert, 377 So.2d 516 (La.App. 3rd Cir. 1980) at 519.
Dr. Hanckes A. Klein, a specialist in internal medicine who was decedent’s treating physician, testified in his deposition that Mr. Orlando was suffering from arteriosclerosis and was on occasion somewhat nervous and depressed. All those who were present at the taking of the will testified that Lawrence Orlando was both physically and mentally aware of what was happening that day. None of appellants’ witnesses saw the testator on April 13, and were thus unable to testify as to his condition on that date.
After reviewing all of the evidence, the trial court concluded that plaintiff had not carried out the burden of proving that Orlando was not of sound mind. Whether or not a testator had the requisite capacity is a question of fact, and the findings of the trial judge will not be disturbed on appeal unless they are manifestly erroneous. Succession of Zinsel, 360 So.2d 587 (La.App. 4th Cir. 1978); Succession of Staggers, 254 So.2d 289 (La.App. 4th Cir. 1971); Succession of Brown, 251 So.2d 465 (La.App. 1st Cir. 1971). We find no error in the trial court’s conclusion.
Appellees, in their first Amended and Supplemental brief ask that we reverse the District Court’s assessment of costs to the succession. Appellees did not assert their objections to the assessment of costs by way of answering the appeal thus they are foreclosed from raising this issue by supplemental brief. La.C.C.P. Art. 2133. A judgment cannot be changed in favor of an appellee who has neither appealed nor answered his adversary’s appeal. Arrow Const. Co. v. American Emp. Ins. Co., 273 So.2d 582. (La.App. 1st Cir. 1973).
For the above and foregoing reasons, the judgment appealed from is hereby affirmed. All costs of the appeal are assessed against appellant.
AFFIRMED.

. The testament itself states that Mr. Orlando spoke and understood English, although unable to read or write same.