GULOTTA, Judge.
In this will contest, Henry Lyons, a nephew of the decedent (Henry Lyons, Sr.) appeals from a judgment annulling the December 14, 1981 olographic will, which names the nephew as universal legatee.
The two-pronged attack in the trial court was that the will was not in the testator’s handwriting and that the testator lacked testamentary capacity. The trial judge concluded that the will “was written and signed by the decedent”, but did “not believe that the decedent had testamentary capacity on the day the Will was written.”
The primary thrust in this appeal by the proponent is the trial court erred in concluding that decedent lack testamentary capacity. Supplemental briefs, however, discuss the issue whether the will was written by the testator.[1]
Because we conclude the opponents of the will failed to carry the required burden of proof to show lack of testamentary capacity, we reverse.
TESTATOR’S HANDWRITING
The one page will reads as follows:
“December 14, 1981”
“I Henry Lyons Sr a resident of 2822 Louisiana Avenue New Orleans Louisiana make this my last will and testament I Bequeath all of the property that I own at the time of my Death to my nephew Henry Lyons I appoint him executor of my estate with full and free Seizin and Dispensed from giving any Security This my will written, dated and is signed by me at New Orleans Louisiana in my own handwriting on this 14th day of December 1981.”
“Henry Lyons”
“One page only”
The testimony regarding the testator’s handwriting was contradictory. Henry Lyons, the universal legatee, and decedent’s niece, Velma Dennis, both testified that the will was in the decedent’s handwriting. Their testimony was buttressed by that of Cy Courtney, a handwriting expert, who compared other writings of the decedent, including a 1951 letter and envelope, and a 1980 Christmas card and envelope, together with a NOPSI identification card bearing the testator’s signature.
On the other hand, the testator’s niece, Geraldine Lyons Miller, and testator’s nephews, Walter and Blaine Clay, testified that the will was not in the testator’s handwriting. Another niece, Rosedale Lyons, stated that portions of the will did not appear to be in the decedent’s handwriting, particularly the testator’s signature.
Opponents point out as significant the testimony of a niece and nephew who stated that their late uncle had never used the name, Henry Lyons, Sr., as it appeared in the olographic will. Although it is apparent (from a comparison of the will with earlier writing of the decedent) that the testator did not refer to himself as Henry Lyons, Sr., we place no such importance on this difference. The will was not signed Henry Lyons, Sr., and the only reference to the use of Sr. is in the body of the will, which was prepared by an attorney as a form for the decedent to follow in writing the will.
When we consider the contradictory lay testimony together with that of the handwriting expert, we cannot say the trial judge erred in finding that the will “was written and signed by the decedent, Henry Lyons.”
TESTAMENTARY CAPACITY
Having so concluded, we are now confronted with the primary thrust of the proponent’s appeal, i.e. the question of the testator’s testamentary capacity.
*231 Well-settled is the rule that testamentary capacity is presumed, and that a person attacking the will has the burden of proving lack of capacity at the time the will was executed such that the testator was not sufficiently sound of mind to understand fully the nature of the testamentary act and appreciate its effect. See Artigue v. Artigue, 210 La. 208, 26 So.2d 699 (1946); Succession of Orlando, 419 So.2d 559 (La.App. 4th Cir.1982); and Succession of Zinsel, 360 So.2d 587 (La.App. 4th Cir.1978), writ denied 363 So.2d 72 (La.1978).
It is also well-settled that the degree of proof required to overcome the presumption of testamentary capacity is similar to that required of the prosecution to rebut the presumption of innocence in a criminal case: The opponent of the will must prove beyond a reasonable doubt that, at the time the will was made, the testator did not have sufficient knowledge and understanding of his action. See Succession of Lambert, 185 La. 416, 169 So. 453 (1936); Succession of Dubos, 422 So.2d 444 (La.App. 4th Cir.1982); writ denied 429 So.2d 132 (La.1983); Succession of Orlando, supra; and Succ. of Collins v. Hebert, 377 So.2d 516 (La.App. 3rd Cir.1979), writ denied 379 So.2d 15 (La.1980).
While the evidence, again, is contradictory regarding testamentary capacity, of significance is the absence of evidence showing lack of testamentary capacity at the time the will was written on December 14, 1981.
Henry Lyons, decedent’s nephew, testified that he had brought the decedent to the hospital on December 11, 1981. On December 14, the day of the writing of the will, he brought the form prepared by an attorney for use by the decedent in writing the olographic will. According to the nephew, at approximately 1:30 a.m. on December 15, the testator gave him an unsealed envelope containing the December 14 will.
Velma Dennis, one of decedent’s nieces, stated she had visited her uncle regularly during 1981, and had seen him on more than five occasions during his hospitalization in December. Her last visit was on the weekend before decedent’s death on Thursday, February 5, 1982. She observed on these visits that the decedent was alert and apparently aware, and that his mind was clear. Although she could not state that she had seen her uncle on December 14, she did testify that she had visited him the second day after he became hospitalized on December 11, and approximately every other day thereafter.
Wayne Lyons, the universal legatee’s son and decedent’s great-nephew, last saw the testator in the hospital on December 21, 1981. According to this witness, the decedent appeared to be aware of what was going on around him, did not seem confused, and appeared to be able to take care of himself. Wayne did not see the decedent on December 14, the day of the writing of the will.
The nurses’ notes during decedent’s hospitalization are especially illuminating. On December 14, despite a temperature of up to 101.9° (noted by the trial judge in written reasons), the decedent was “easily aroused” at 12 a.m., was “alert” at 7:30 a.m. and was “alert and oriented” at 4 p.m. The nurses’ notes indicated that at 10 p.m. on December 12, the decedent was “easily aroused” and “alert and oriented”. The notes further reflect that the decedent was observed reading at 11 a.m. on December 13, and exhibited a good appetite on December 13, 14 and 15.
Witnesses testifying regarding decedent’s lack of testamentary capacity included, for the most part, nephews and nieces who would benefit from an earlier will if the December 14 olographic will were held invalid. One of those nieces, a registered nurse supervisor, saw the decedent on one occasion, on the Sunday before decedent’s Wednesday, December 30 surgery. At another place in her testimony, she stated that this visit occurred one week before the surgery. This witness observed during her 45 minute visit that her uncle was confused and disoriented.
Another niece, who visited the decedent at the hospital either every day or every other day, stated that decedent had “good *232 days and bad days.” She visited on December 13, 16, and 19. Regarding her December 13 visit, she stated the decedent was in “very bad shape.”
Although an opponent nephew stated that his uncle was disoriented while in the hospital, his brother indicated that several times during his hospitalization his uncle “made sense”. Another niece testified that when she first visited her uncle about his fourth day in the hospital, he did not seem to understand what was going on.
Another of decedent’s nieces testified that her uncle was incoherent during his hospitalization, but that on December 19, the decedent had signed checks and, although he needed help with his signature, he had understood what he was signing and what the money was for.
Decedent was first seen by his general surgeon on December 16, 1981 for approximately 5 or 10 minutes, and again on the following day. He performed the operation on the decedent on December 30. This physician observed that he had difficulty communicating with the decedent who would only understand after much repetition. He did not think decedent would understand exactly what he was signing regarding any business matters or disposition of his property. This opinion is suspect, however, considering that the decedent had signed consent forms on December 11, December 21 and December 29, for emergency treatment and operative procedures.
This evidence considered, we are led to conclude that the trial judge erred in finding that decedent had lacked testamentary capacity at the time the will was written. We differ from the trial judge not on credibility, but on the sufficiency of the evidence. The opponents failed to overcome the presumption of testamentary capacity and to establish beyond a reasonable doubt that the testator lacked capacity when the will was made. Significantly, none of the witnesses offered by the opponent specifically stated that on December 14 the decedent had been disoriented to a point where he had not understood the nature of a disposition. Furthermore, the nurses’ notes on the day before, the day of, and day after the writing of the will indicated that the decedent was alert and oriented.
Accordingly, the judgment of the trial court dismissing the petition of Henry Augustus Lyons offering for probate the olo-graphic will dated December 14, 1981, is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent herewith.
REVERSED AND SET ASIDE; REMANDED.
REDMANN, C.J., dissents and assigns reasons.

. In the original briefs filed in this court, the sole issue presented was testator’s mental capacity. During oral argument, however, the panel expressed concern about the propriety of remanding the matter or deciding in this court if a serious question arose in the panel’s deliberations concerning the genuineness of the testator’s handwriting. Supplemental briefs addressed to this issue were requested, and that aspect of the matter is also now before us.