442 So.2d 691 (1983)
In the Matter of the SUCCESSION OF Lowell Hardy KEEL.
No. 83-CA-0228.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*692 Paul S. West, Baton Rouge, for plaintiff.
Jefferson D. Hughes, III, Walker, for defendants.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
In this will contest, Irma Janelle Keel, wife of decedent/testator, appeals from a judgment declaring null and void a statutory will prepared in accordance with R.S. 9:2442. The trial court found that the testator, Lowell Hardy Keel, lacked the required testamentary capacity to confect a will. We affirm.

BACKGROUND FACTS
The will was executed on January 19, 1982, while decedent was in Baton Rouge General Hospital. He was admitted to the hospital on January 15 suffering from headaches and pain. Present at the execution of the will were the drafting attorney, two witnesses (a friend of decedent and the attorney's secretary) and decedent's wife, Irma Janelle Keel. The will's provisions gave the disposable portion to Irma Janelle Keel and the forced portion to decedent's children who were born of a previous marriage. Additionally, Irma Janelle Keel was granted a usufruct over the children's forced portion.
The testator died on February 4, 1982, and Kenneth B. Keel, decedent's son, subsequently filed an opposition to the probate of the will alleging that decedent suffered from a terminal illness and was mentally incompetent at the time the will was executed. At the probate hearing, the trial judge agreed and found the testator lacked the testamentary capacity to confect a will and declared the testament void. Irma Janelle Keel has appealed, alleging the trial court erred in its findings.

TESTAMENTARY CAPACITY
Initially, it must be noted that testamentary capacity is solely a question of fact to be determined by the trial court and its finding will not be disturbed on appeal in the absence of manifest error. Succession of Dubos, 422 So.2d 444 (La. App. 4th Cir.1982), writ denied, 429 So.2d 132, 160 (La.1983). With regard to the issue of capacity, there exists a presumption that the testator possessed the requisite testamentary capacity, which is only rebutted by satisfactory and convincing evidence. Succession of Bush, 292 So.2d 915 (La.App. 1st Cir.), writ denied, 294 So.2d 837 (La.1974). The degree of proof necessary is similar to that required to rebut the presumption of innocence in a criminal trial. Succession of Collins v. Hebert, 377 So.2d 516 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 15 (La.1980).
The specific burden on the attacking party is to prove that at the time of execution the testator was not sufficiently sound of mind to fully understand the nature of the will and appreciate its effects. Succession of Brown, 251 So.2d 465 (La. App. 1st Cir.1971). In determining testamentary *693 capacity, the courts will consider the physical and mental condition of the testator not only at the time of execution, but also prior and subsequent thereto, since the actions, conduct and physical and mental condition of the testator before and after the execution of the will are of probative value in deciding testamentary capacity. Succession of Brown, supra.
At the probate hearing, the drafting attorney, who also acted as notary, testified that he read the will to decedent and explained each paragraph. The testator then read the will, stated he understood it, and inquired whether his wife received the greatest benefit possible. The attorney had drawn the will to so favor the wife upon her instructions that this was the testator's desire.
After the testator was unable to sign his name, the testament was modified to reflect that because of his infirmity, a mark would be substituted for his signature. The attorney stated that he felt the testator knew what was happening and understood what he was doing. His secretary, who was also a witness, testified that she also felt that decedent was competent. For both the attorney and his secretary, it was their first and only meeting with decedent.
The other witness to the will, Claudine Richter, was a friend of the decedent and Irma Janelle Keel. She corroborated the testimony of the attorney and also felt that the decedent was aware of his actions and understood the will. Irma Janelle Keel, who was also present at the will's execution, testified that decedent was competent and understood the will.
However, according to Kenneth Keel, decedent was disoriented and unresponsive during his stay at Baton Rouge General Hospital. Gayle Kelly, decedent's sister, testified that she visited decedent nearly every day at the hospital. She stated that decedent was disoriented as to time and location, and often in pain. She stated that on one occasion decedent thought he was in San Angelo, Texas, and the year was 1936. Donald Kelly, husband of Gayle Kelly, testified that when decedent was admitted to the hospital he was disoriented and remained so during his stay there.
The treating physicians, Dr. James Lutschg, internal medicine specialist, and Dr. John Hopper, neurologist, both testified by deposition that the decedent was not mentally competent to draw a will. The testator was suffering from both lung and brain tumors. The associated swelling with the brain tumor caused his disorientation problems. Both doctors consulted testator's wife, Irma Janelle Keel, for consent to commence treatment, because they felt testator could not make a rational decision regarding therapy alternatives. Even though the testator did improve somewhat, neither doctor felt that he was ever mentally competent enough to understand the provisions of a will. It is doubtful whether testator could even read, as he was also suffering double vision brought on by the brain tumor. Dr. Hopper stated that the testator often referred direct questions to his wife or sister for answering rather than answer them himself.
It is apparent from the foregoing that the trial judge was presented with diverse testimony. Our examination of the record and the testimony leads us to conclude that the trial judge did not commit manifest error in finding that the testator lacked testamentary capacity at the time of the making of the will. Accordingly, we affirm the judgment of the trial court.

DECREE
For the assigned reasons, the judgment of the trial court is affirmed.
AFFIRMED.