448 So.2d 839 (1984)
SUCCESSION OF James Edmond PRICE, Appellee,
Irene Hampton Stewart, Legatee,
v.
Billy Jack PRICE, Appellant.
No. 16101-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
Shadoin & Sheehan by Robert E. Shadoin, Ruston, for appellant.
Sharp & McVea by Robert W. Sharp, Jr., Ruston, for appellee.
Before HALL and SEXTON, JJ., and McCLENDON, J. Pro Tempore.
SEXTON, Judge.
Billy Jack Price brought an action to annul the probated statutory testament of his uncle, James Edmond Price, an interdict, *840 claiming that the decedent did not possess the requisite capacity to dispose of his property mortis causa. The trial court upheld the validity of the will, finding that the opponent had not proven the testamentary incapacity of James Edmond Price. We affirm.
James Edmond Price died on August 23, 1981. He left a statutory will which he executed on May 3, 1971 designating Irene Hampton Stewart, his neighbor, as his sole testamentary heir and universal legatee. The will was probated on March 23, 1982 and Mrs. Stewart was sent into possession. Shortly thereafter, this attack upon the validity of the will was initiated.
The sole issue presented by this appeal is whether the trial judge erred in his finding that James Edmond Price was mentally capable of executing a testament on May 3, 1971.
One must be of sound mind to donate mortis causa. LSA-C.C. Art. 1475. The determination of capacity is tested at the moment at which the donation is made. LSA-C.C. Art. 1472. Testamentary capacity is always presumed until the contrary is established. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951); Succession of Lambert, 185 La. 416, 169 So. 453 (1936); Succession of Mithoff, 168 La. 624, 122 So. 886 (1929). The degree of proof required to overcome this presumption of capacity is great and is sometimes said to be similar to that required in criminal cases, namely, any reasonable doubt must be resolved in favor of the validity of the testament. This burden rests with the opponent of the will. Succession of Mithoff, supra; Succession of Schmidt, supra; Succession of Lambert, supra; Succession of Keel, 442 So.2d 691 (La.App. 1st Cir.1983); Succession of Lyons, 441 So.2d 229 (La.App. 4th Cir. 1983); Succession of Budwah, 441 So.2d 39 (La.App. 3d Cir.1983); Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir. 1982), writs denied, 429 So.2d 126; Succession of Littleton, 391 So.2d 944 (La.App. 2d Cir.1980); Succession of Arnold, 375 So.2d 157 (La.App. 2d Cir.1979); Succession of Patterson, 329 So.2d 925 (La.App. 2d Cir.1976).
Interdiction, standing alone, does not ipso facto incapacitate the interdict from making a will, but is only evidence of decedent's incapacity to be evaluated in light of the other evidence. Succession of Lanata, 205 La. 915, 18 So.2d 500 (1944).
The determination of testamentary capacity is a question of fact and the trial judge's finding in this respect will not be disturbed unless clearly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Succession of Kilpatrick, supra; Brown v. Dunbar, 375 So.2d 148 (La.App. 2d Cir.1979); Succession of Smith, 261 So.2d 679 (La.App. 2d Cir.1972).
At trial, the opponent introduced in his case in chief the interdiction proceedings and rested. These proceedings reveal that a petition for interdiction of James Edmond Price was filed by his sister, Julia Cooper, on June 16, 1925. A neuro-psychiatric report completed upon examination of Mr. Price by T.J. Seale, ward surgeon, and dated January 26, 1925, forms a part of the interdiction record. This report states that James Edmond Price was discharged from the Army on March 20, 1918 for the reason of "mental defect, moron." The report quotes the present complaint of the patient as "I have been crazy but I am getting right again." Mr. Price was diagnosed in the ward surgeon's report as suffering from Dementia PraecoxSimple Type, and it was recommended that he be transferred to a hospital for prolonged care and treatment. Based on this evidence, judgment was signed interdicting James Edmond Price on June 29, 1925. The judgment of interdiction was never lifted and remained in effect on the date of Mr. Price's death, August 23, 1981.
The proponent introduced the testimony of six witnesses in addition to her own. Each witness had known Mr. Price for a number of years and each testified that they were unaware of any mental infirmity. These witnesses testified that James Edmond Price had never exhibited bizarre *841 or irrational behavior and had not seemed confused, disoriented, or unable to comprehend or communicate. To the contrary, the witnesses portrayed Mr. Price as a friendly, kind and gentle man who remembered birthdays and holidays and who was a shrewd trader, frugal with his money. Particularly noteworthy is the testimony of Dr. Joseph L. Smith, an internist who was Mr. Price's personal physician. Dr. Smith testified that he had examined Mr. Price on May 3, 1971, the day the will in question was executed. The decedent was being treated for high blood pressure and came in for a routine examination. The doctor testified that Mr. Price appeared to have no mental problems on that day and "had his mind," as he had on all other occasions when Dr. Smith had examined him.
In rebuttal, plaintiff called Mr. A.K. Goff, the attorney for Ruston State Bank, curator of the deceased. Mr. Goff testified that the latest entry in his file concerning Mr. Price was 1957. Although Mr. Goff admitted that he had not seen Mr. Price during the period in which the will was confected, he described the decedent as walking with an abnormal gait, with facial expressions of one not capable of actions of a normally competent person. Mr. Goff opined that, as an attorney, he would not have prepared and executed a testament for the deceased.
Finally, a letter from Mr. Hale M. Walker, the attorney who prepared the testament for James Edmond Price, was introduced by stipulation. The letter states that although Mr. Walker had no independent recollection of drawing up Mr. Price's will, he would not have prepared a will for a person whom he did not believe knew what he was doing.
An evaluation of this evidence in light of the applicable legal principles leads us to conclude that the strong presumption of Mr. Price's sanity was not overcome by the fact that he had been interdicted some 56 years before his death. In fact, the evidence shows that Mr. Price was a mentally capable individual who carried through with his oft expressed desire that his neighbor, who was his friend and cared for him for a number of years, should have his worldly possessions. The trial judge's finding that James Edmond Price possessed testamentary capacity on May 3, 1971 is not clearly erroneous and is accordingly affirmed.
AFFIRMED.