ARMSTRONG, Judge.
Waldo Francois was married to Macrina Francois for many years. They had no children. In September of 1982 Mrs. Ma-crina Francois died. Shortly thereafter Waldo Francois had his nephew, J.D. Tufts II, an attorney, draft a document entitled “Irrevocable Inter Vivos Trust” (“trust”).
The pertinent provisions of the trust provide as follows:
4.1 SETTLOR shall be the sole income and principal beneficiary during his lifetime. During the lifetime of SETTLOR, the Trustee shall pay to SETTLOR such amounts of income or principal at such times as is necessary for the support, maintenance, welfare or medical expenses of SETTLOR under the objective standards set forth below; if SETTLOR is under legal disability or incapable of properly managing his affairs, the Trustee shall apply such amounts for his benefit ...
4.2 Upon the death of the SETTLOR, the Trustee shall divide the trust estate among the following individuals in the following proportions, ... [1]
The individuals named were 14 of Mr. Francois’ nieces and nephews. Mr. Tufts was named Trustee. The trust instrument was signed by Mr. Francois and Mr. Tufts on October 6, 1982. However, it was not notarized until sometime between January 1, 1983 and August 30, 1983. Mr. Tufts son-in-law notarized the document. In addition Ms. Leslie Rowland, one of the attesting witnesses to the trust executed an affidavit acknowledging her witnessing at the signing of the trust instrument.
Sometime after he signed the trust instrument Mr. Francois met Mrs. Dorothy *675 Weisfeld Haring, a widow. On March 3, 1983 Mr. Francois and Mrs. Haring were married. On March 14, 1983 Waldo Francois allegedly executed an olographic will; stating in part as follows: “I leave all I die possessed to my beloved wife Dorothy We-isfeld Francois.” On April 11, 1983 Mr. Francois was hospitalized due to a stroke. On April 21, 1983 Mr. Francois allegedly executed a statutory will which stated in part as follows: “I leave and bequeath all of my property, both immovable and moveable, corporeal and incorporeal to my wife Dorothy Weisfeld Francois.”
On July 14, 1983 Mr. Francois filed a petition against Mr. Tufts for declaratory judgment asking that the Trust be declared null and void, and set aside.[2] To that petition Mr. Tufts filed various exceptions including exceptions of lack of procedural capacity, no cause of action, and no right of action.
On October 15, 1983 Waldo Francois died.
In a second case Mr. Tufts offered a statutory will executed on October 14,1982 by Mr. Francois for probate.
Finally, in a third case Mrs. Francois offered both the March 14, 1983 olographic will and the April 21, 1983 statutory will for probate.
The three cases were consolidated for trial. On December 20,1984 the trial court issued a judgment as follows: (1) decreeing that the trust is valid and dismissing with prejudice the suit for declaratory judgment; (2) dismissing the petition for probate of the March 14, 1983 olographic will and the April 21, 1983 statutory will; and (3) recognizing that the October 14, 1982 statutory will is valid and enforceable.
Mrs. Francois appeals and makes several allegations regarding the trust. She claims that the trust is null because it contains a prohibited substitution and because it did not meet the form requirements for an inter vivos trust. She also claims that there was no transfer or delivery of title to the trustee. In addition Mrs. Francois claims that the trial court erred in concluding that the March 14, 1983 olographic will and the April 21, 1983 statutory will are invalid.
Appellant claims that the trust provision providing that Waldo Francois would be the “sole income and principal beneficiary during his lifetime” and the provision that the trust estate be divided among his nieces and nephews at his death constitutes a prohibited substitution. Appellant also asserts that those provisions are invalid because they provide for a “shifting” of the principal from Mr. Francois to his nieces and nephews and that such a shift is authorized only under the circumstances described in LSA-R.S. 9:1973:
The trust instrument may provide that the interest of a principal beneficiary who dies intestate and without descendants during the term of the trust or at its termination vests in some other person or persons, each of whom shall be a substitute beneficiary.
We do not agree with appellant’s argument.
LSA-R.S. 9:1753 provides as follows:
No particular language is required to create a trust, but it must clearly appear that the creation of a trust is intended. A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation.
In the comments to that statute Professor Oppenheim cites 90 C.J.S. § 161 L. as follows:
In ascertaining the intention of the creator of a trust, the courts are not confined to a strict and literal construction *676 of the language used, particularly when such construction will frustrate the intention of the creator as gathered from the whole trust instrument. On the contrary, the words used in a trust instrument must be construed in that sense which will best effectuate the intent of the creator or settlor of the trust and, if possible, to avoid the destruction of the trust. In the determination of the set-tlor’s intent, the words used will be taken in their usual, ordinary, or natural meaning in the absence of anything in the instrument under consideration to deflect from that meaning, or unless a clear intention to use them in another sense can be collected, and that other can be ascertained....
At trial Mr. Tufts testified that he had never prepared a trust instrument before preparing the trust instrument for Mr. Francois. He also testified that the designation of Mr. Francois as “income and principal beneficiary” was made because the corpus of the trust consisted of municipal bonds, which coupons when redeemed constituted a small portion of the principal as well as interest.
In addition, there was testimony at trial that Mr. Francois intended to create a trust in which he would be the income beneficiary during his lifetime and upon his death his nieces and nephews would become the beneficiaries. Mr. Tufts testified that when he presented the instrument for Mr. Francois’ signature he explained to Mr. Francois that Mr. Francois would be the income beneficiary and that Mr. Francois understood and accepted the trust as explained.
Given the law and the testimony we do not think that the trial court erred in construing the trust instrument to validate Mr. Francois’ intent, and hence in concluding that there was no prohibited substitution. There was no prohibited substitution because Mr. Francois was never intended to be a principal beneficiary.
With regard to the claim that the trust instrument is invalid for lack of proper form, we must disagree. LSA-R.S. 9:1752 states: “[A]n inter vivos trust may be created only be authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses.”
There is no dispute that the trust instrument is not an authentic act because it was not signed before a notary public. LSA-C.C. art. 1833. However appellant also claims that the trust is not a valid act under private signature because the attesting witness did not acknowledge her signature at the same time that she signed the trust instrument.
We do not think that LSA-R.S. 9:1752 requires that the acknowledgement be executed at the same time that the trust instrument is signed. It is clear from the Civil Code articles governing acknowledgement of acts under private signature and the cases interpreting those articles that acknowledgement at the time of signature is not contemplated. LSA-C.C. art. 1836; former LSA-C.C. art. 2242 (C.C.1870). We therefore find that the trust instrument is a valid act under private signature.
Appellant further argues that the trust is null because there was no delivery of the corpus of the trust, i.e. the municipal bonds, to the trustee, Mr. Tufts. Appellant cites no legal basis for this argument nor can this court supply one. LSA-R.S. 9:1822 provides as follows: “An inter vivos trust is created upon execution of the trust instrument without regard to the trustee’s acceptance.” The trust was valid and complete when it was executed. Actual delivery of the municipal bonds to Mr. Tufts was not required.
Mrs. Francois also claims that the trial court erred in finding that the March 14, 1983 Olographic will is a forgery.
LSA-C.Civ.Pro. art. 2883 provides as follows:
A. The olographic testament must be proved by the testimony of two credible witnesses that the testament was entirely written, dated, and signed in the testa *677 tor’s handwriting. The court must satisfy itself, through interrogation or from the written affidavits or the depositions of the witnesses, that the handwriting and signature are those of the testator,
[[Image here]]
With regard to proof that the olographic will was entirely written, dated, and signed by Mr. Francois, the testimony was as follows: Mr. John Doria, the office manager of Dorsey and Company, the firm which handled Mr. Francois’ investments testified that he had seen Mr. Francois’ signature a number of times but that he could not say whether or not it was Mr. Francois’ signature on the olographic will. Mr. George Dorsey, an investment banker testified that he was well acquainted with Mr. Francois’ signature and that it appeared to be Mr. Francois’ signature on the will. However, Mr. Dorsey also testified that he had never received any other type of handwritten correspondence from Mr. Francois. Mr. Francois’ former secretary, Ms. Marilyn Troya-ni, gave conflicting testimony. Ms. Troya-ni testified “[tjhat’s positively his signature. And — (pause)—most of the words look like him (sic).” But Ms. Troyani later testified that there were a number of errors in the will, which was uncharacteristic of Mr. Francois. Mrs. Francois testified that the will had been entirely written, dated, and signed by Mr. Francois.
Appellant and appellee also presented expert witnesses in handwriting analysis. Appellant’s expert Mr. Cy Courtney testified that based on a comparison of checks written by Mr. Francois to the olographic will that he is of the opinion that the will was entirely written, dated, and signed by Mr. Francois. Ms. Cynthia Bentley testified as a handwriting expert for the appel-lees’. Based on a comparison of several notes as well as checks written by Mr. Francois to the olographic will Ms. Bentley concluded that “[a]fter examining all of the samples given to me, the copy of the will, the six checks and notes given to me within the year prior to Mr. Francois’ death, the actual signature and codicil were not written by Mr. Francois.”
In its reasons for judgment the trial judge stated, “Miss Cynthia Bentley’s expert opinion was given much weight ... those elements of reliability were totally lacking in the testimony of Mr. Cy Courtney ... Furthermore, the testimony of the lay witnesses exemplified to the court such a lack of knowledge and familiarity with the handwriting of the decedent, so as to leave the Court unsatisfied that the purported olographic testament was entirely written, dated, and signed by Waldo Emerson Francois.”
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; whence there is conflict in the testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review...
Canter v. Koehring, 283 So.2d 716, 724 (La.1973).
Given the testimony and evidence before the trial court we find that the trial court did not err in concluding that the olographic will is a forgery.
Finally, appellant claims that the trial court erred in concluding that the April 21, 1983 statutory will is invalid because “Waldo E. Francois did not have the legal, mental, or physical capacity to execute the will
One must be of sound mind to donate mortis causa. LSA-C.C. Art. 1475. The determination of capacity is tested at the moment at which the donation is made. LSA-C.C. Art. 1472. Testamentary capacity is always presumed until the contrary is established. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951); Succession of Lambert, 185 La. 416, 169 So. 453 (1936); Succession of Mithoff, 168 La. 624, 122 So. 886 (1929). The degree of proof required to overcome this presumption of capacity is *678 great and is sometimes said to be similar to that required in criminal cases, namely, any reasonable doubt must be resolved in favor of the validity of the testament. This burden rests with the opponent of the will. Succession of Mi-thoff, supra; Succession of Schmidt, supra; Succession of Lambert, supra; Succession of Keel, 442 So.2d 691 (La. App. 1st Cir.1983); Succession of Lyons, 441 So.2d 229 (La.App. 4th Cir.1983); Succession of Budwah, 441 So.2d 39 (La.App. 3d Cir.1983); Succession of Kilpar trick, 422 So.2d 464 (La.App.2d Cir.1982), writs denied, 429 So.2d 126; Succession of Littleton, 391 So.2d 944 (La.App.2d Cir.1980); Succession of Arnold, 375 So.2d 157 (La.App.2d Cir.1979); Succession of Patterson, 329 So.2d 925 (La. App.2d Cir.1976).
Succession of Price v. Price, 448 So.2d 839, 840 (La.App. 2 Cir.1984).
The testimony at trial regarding Mr. Francois’ capacity was as follows: Ms. Linda Thevenot, a nurse, was a witness to the statutory will. Ms. Thevenot testified that Mr. Francois indicated that he knew what he was signing by nodding his head. Ms. Thevenot also testified however that Mr. Francois could not complete a sentence. Based on a review of Mr. Francois’ medical records Dr. John Adriani, an expert in pharmacology, testified that in his opinion as a result of the drugs Mr. Francois was given between April 12 when he entered the hospital and April 21, 1983 when the will was executed Mr. Francois was not competent to execute the statutory will. Mr. Frank Williams, a business associate of Mr. Francois, testified that he saw Mr. Francois in May or June of 1983, and that Mr. Francois did not have any speech problems and also walked normally. Mr. Sidney Mestayer, one of Mr. Francois’ relatives testified that he spoke to Mr. Francois by telephone after Mr. Francois had the stroke, and that Mr. Francois had difficulty talking, but that he was able to make a few sentences. Mrs. Francois testified that she was with Mr. Francois all day on April 21, 1983, and that he could understand her and speak with some difficulty. Dr. Richard Levy, an expert in the field of neurosurgery, also testified. Dr. Levy’s April 17, 1983 examination of Mr. Francois revealed moderate expressive aphasia. Dr. Levy testified that on April 17, 1986 Mr. Francois was competent to understand what Dr. Levy told him and that he could speak although he had difficulty in choosing the right words to express himself. In Dr. Levy’s opinion it was “more probable than not that he (Mr. Francois) was able to comprehend on April 21, 1983 as he was on April 17, 1983 ...” Mr. Tufts testified that he visited Mr. Francois at the hospital on April 21, 1983 and in his words Mr. Francois was a “zombie.”
The trial court in its reasons for judgment stated, “The Court has determined that Waldo E. Francois did not have the legal, mental, or physical capacity to execute the will or the letter of authorization, nor did he request that they be prepared ... Dr. Adriani’s very learned expert opinion was conclusive, and left no doubt whatsoever as to the basis and rationale upon which it was given... The Court finds that the defendants who allege lack of testamentary capacity have overcome the presumption of capacity with clear and convincing evidence.”
We find no error in the trial court’s determination that appellees successfully rebutted the presumption of testamentary capacity.
The trial court correctly determined that the Irrevocable Intervivos Trust is valid; that the evidence did not prove that the olographic will was entirely written, dated and signed by Waldo Francois; and that Waldo Francois lacked the requisite capacity to execute the statutory will.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. The corpus of the trust was composed entirely of municipal bonds, with a total face value of $940,000.00.

. Pursuant to a petition for interdiction, on September 12, 1983 Mrs. Dorothy Francois was appointed Provisional Curatrix of Mr. Waldo Francois. On September 20, 1983 Mrs. Francois was substituted as party plaintiff in the action for declaratory judgment. After Mr. Francois’s death American Bank and Trust Co. was pointed Provisional Administrator of Mr. Francois’s succession. On January 25, 1984 American Bank and Trust Co. was susbstituted as party plaintiff in the action for declaratory judgment.