DOMENGEAUX, Judge.
This is an action to annul the last will and testament of Edward B. Launius for lack of testamentary capacity. The opponent to the will is Linda Launius Gallagher, daughter of the testator. The proponents of the will are Gladys L. Warden, the testator’s sister, the Steven E. Launius Scholarship Fund, administered by the University of Mississippi Foundation, Louise Holmes, the testator's former housekeeper, and Martha Brown.
Edward B. Launius died on July 27,1983, leaving a will dated January 28, 1983. At the time he executed the will and at the time of his death, Mr. Launius was domiciled in Jackson, Mississippi. The will at issue in this case was valid as to form under Mississippi law and was probated in the Chancery Court of Hinds County, Mississippi. Under this will Mr. Launius purports to leave fifty percent of his estate to his sister, Gladys L. Warden, twenty-five percent to the Steven E. Launius Scholarship Fund, twenty percent to Martha Brown, and five percent to Louise Holmes. Mr. Launius’ only surviving child, Linda Launius Gallagher, was not included in the will.
The executor in the estate of Edward B. Launius, John P. Weeks, petitioned the district court to admit Mr. Launius’ Mississippi testament to probate in Louisiana. Mrs. Gallagher opposed probation of the will, arguing that Edward B. Launius was of unsound mind at the time he executed the testament, and was, therefore, without capacity to make such a donation. The trial court rendered judgment upholding the validity of the will and admitted it to probate. Mrs. Gallagher appealed.
On appeal, Mrs. Gallagher makes the following assignments of error:
(1) The trial court erred in admitting Doctor Rowden as an expert witness in psychiatry, and in allowing him to render an expert opinion regarding Mr. Launius’ state of mind at the time the purported last will and testament was executed; and
(2) The trial court erred in finding that Mrs. Gallagher failed to prove that Mr. Launius was not of sound mind on January 28, 1983 when he executed his last will and testament.
With respect to Mrs. Gallagher’s first assignment of error, our jurisprudence states that the qualification of an expert witness rests within the sound discretion of the trial court, and its determination will not be disturbed on appeal except upon a showing of manifest error. Richardson v. Continental Insurance Company, 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1304 (La.1985). Mrs. Gallagher timely objected to the qualification of Doctor Rowden as an expert in psychiatry capable of testifying with regard to Mr. Launius’ mental condition at the time he executed his testament. She argues here that the trial court erred because Doctor Rowden is primarily a child psychiatrist and because he has no experience testifying in court regarding a person’s mental condition in the past based on subsequent examination of written documents. We do not agree that the trial court was manifestly erroneous in qualifying Doctor Rowden to testify as an expert witness.
Doctor Rowden testified that after receiving his Doctor of Medicine degree from Loma Linda University School of Medicine, he interned at the University of California at Irvine in both medicine and psychiatry. He stated that in 1984 he became certified in adult psychiatry by the American Board of Psychiatry and Neurology. He also testified that he was Chief of Children’s Mental Health Services at Kees-ler Air Force Base between 1981 and 1983. He indicated he also practiced adult psychiatry during that period. Doctor Rowden further testified that he is licensed to practice in Louisiana, as well as in Mississippi, California, and Hawaii. Doctor Rowden continued, stating that he had been practicing general psychiatry in Natchez, Mississippi, for the last two and one-half years, *684 and that he was the child psychiatric consultant to the Greenwell Springs Hospital, an adolescent facility in Baton Rouge, Louisiana. ⅛
It is apparent from the record that Doctor Rowden has a substantial background, both through training and experience, in adult as well as child psychiatry. His lack of experience in testifying in court on the issues presented here does not deter from his qualification and ability to form expert opinions on those issues. We cannot conclude from our review of the record that the trial judge was manifestly erroneous in accepting Doctor Rowden as an expert witness in psychiatry and in allowing him to testify as such in this case.
With regard to Mrs. Gallagher’s second assignment of error, the general rule is that issues relating to the capacity of the testator to make a will of immovable property will be resolved by applying the laws of the place where the property is situated irrespective of the laws of the domicile of the testator or of the place where the will was executed. Guidry v. Hardy, 254 So.2d 675 (La.App. 3rd Cir. 1971), writ denied, 256 So.2d 441 (La.1972).
In this case, therefore, insofar as immovable property in Louisiana may be affected, the issue of whether Mr. Launius had the capacity to make a will on January 28, 1983, must be governed by the laws of Louisiana.
The law on testamentary capacity was recently stated by this Court in Succession of Ellis, 486 So.2d 260 (La.App. 3rd Cir. 1986), at pages 262, 263, as follows:
“We note from the outset that the question of testamentary capacity is a question of fact. The trial court’s factual findings in this regard will not be disturbed on appeal unless they are clearly and manifestly erroneous. Succession of Caprito v. Mayhew, 478 So.2d 243 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1331 (La.1986); Succession of Price v. Price, 448 So.2d 839 (La.App. 2nd Cir.1984).
The law applicable to a determination of testamentary capacity was set forth by the Supreme Court in Succession of Lyons, 452 So.2d 1161 (La.1984), as follows:
‘The capacity to make a will is tested at the time the will is made. LSA-C.C. art. 1472. To make a donation mortis causa, a person must be of sound mind. LSA-C.C. art. 1475. The question is whether the testator understood the nature of the testamentary act and appreciated its effects. Succession of Moody, 227 La. 609, 80 So.2d 93 (1955). The burden of proving lack of testamentary capacity is upon the party alleging it. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951); Succession of Riggio, [405 So.2d 513 (La. 1981) ], supra.
There is a presumption in favor of testamentary capacity....’
.... The capacity of a testator both prior to and subsequent to the making of his testament is competent evidence to be considered in determining testamentary capacity, since the actions, conduct and physical and mental condition of the testator before and after execution of the will are of probative value in deciding testamentary capacity. Succession of Brown, 251 So.2d 465 (La.App. 1st Cir. 1971); Succession of Keel, 442 So.2d 691 (La.App. 1st Cir.1983).”
The court in Lyons also addressed the standard of proof required to overcome the presumption in favor of testamentary capacity. In concluding that the proper burden of proof in such a case is proof by clear and convincing evidence, the court in Lyons stated:
“Generally, this third burden of proof requires more than a preponderance of the evidence but less than beyond a reasonable doubt. The existence of the disputed fact must be highly probable, that is, much more probable than its non-existence. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). This standard is usually employed where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds. McCor *685 mick on Evidence, Section 340(b), p. 798 (2nd ed. 1972).” 452 So.2d at 1165.
With these principles in mind, we now consider whether the trial court correctly found that Mrs. Gallagher failed to establish by clear and convincing evidence that Edward B. Launius lacked testamentary capacity at the time he executed his testament.
To support her case, Mrs. Gallagher relies primarily on her own testimony and on the testimony of Dr. Gray Hilsman, and Mr. Launius’ second wife, Eleanor Launius, as well as on the deposition testimony of Martha Brown. The record shows that in the early 1950s Mr. Launius divorced Pauline Richardson Launius, his first wife and the mother of Mrs. Gallagher. At that time, Pauline Richardson Launius, was given custody of Mrs. Gallagher, who was then twelve years old. Between the time of the divorce and Mr. Launius’ death on July 27, 1983, a period of more than thirty years, Mrs. Gallagher has seen her father three times. Also during that period she talked with him on the telephone and corresponded with him a number of times. Mrs. Gallagher testified that after a long period when there was no communication, her correspondence and telephone exchanges with him were on a regular basis, starting in late 1978. Mrs. Gallagher’s testimony indicates that she did not see Mr. Launius in person at or near the time he executed his testament on January 28, 1983. In fact, the last time that Mrs. Gallagher saw her father in person was in the mid-1960s. Also, Mrs. Gallagher’s final communication with her father was in a letter to him dated June, 1982, seven months prior to the confection of his testament.
Mrs. Gallagher also offered the testimony of Martha Brown and Mrs. Eleanor Lau-nius. Martha Brown testified that when she visited Mr. Launius he would usually have three to four drinks a night, while occasionally having as many as seven or eight. Mrs. Brown also testified that Mr. Launius told her he was going to make a will and that he showed her a copy of it after having made it. She did not indicate that at that time Mr. Launius manifested any inability to understand the nature of the testamentary act or its consequences.
Mrs. Eleanor Launius also testified with respect to Mr. Launius’ drinking habits. She stated that during the last few years they lived together before their divorce in 1977 Mr. Launius was a heavy drinker, drinking as much as a fifth of whiskey a day. She also testified, however, that she did not know when he executed his will or what his physical or mental condition was at the time he executed his will.
Mrs. Gallagher also called Dr. Gray Hils-man, a psychiatrist, to testify on her behalf concerning Mr. Launius’ mental condition at the time he executed his will. Doctor Hilsman examined a number of documents in order to form his opinion, but had not examined Mr. Launius prior to his death. Doctor Hilsman examined the document styled the last will and testament of Edward B. Launius, a series of letters and correspondence between Mrs. Gallagher and Mr. Launius, a series of checks drawn by Mr. Launius and made payable to liquor stores, and the medical records of Dr. Bryan Barksdale, Mr. Launius’ treating physician. Based on his review of these documents, Doctor Hilsman stated that in his opinion Mr. Launius was not of sound mind on the date that he executed the testament.
In reaching his conclusion, Doctor Hils-man stated that the testament itself shows signs of Mr. Launius’ unsoundness of mind. More specifically, Doctor Hilsman pointed to the second paragraph of the testament which states: “Should my sister and next of kin, Gladys L. Warden, of Houston, Texas, survive me, then this is my will.” Doctor Hilsman stated that the characterization of Ms. Warden as his “nearest of kin” was unusual since most people would consider the only child to be their nearest of kin. Doctor Hilsman indicated that this was significant since Mr. Launius had carried on extended correspondence with his sole surviving child, Mrs. Gallagher, at which time he had expressed deep affection for her. Doctor Hilsman’s testimony was to the effect that Mr. Launi-us’ failure to include Mrs. Gallagher in his *686 testament, and his designation of his sister as his nearest of kin, while having acknowledged his affection for Mrs. Gallagher in his correspondence, was illogical and inconsistent with a finding that he was of sound mind at the time he executed his will.
In his written reasons for judgment the trial court concluded that Mrs. Gallagher failed to prove by clear and convincing evidence that Mr. Launius was of unsound mind at the time he executed the testament. This conclusion is fully supported by the record, and given the trial court’s determination of credibility, not manifestly erroneous. We note that neither Mrs. Gallagher nor Mrs. Eleanor Lau-nius had seen Mr. Launius at the time he executed the testament. Neither could testify concerning Mr. Launius’ ability to understand the testamentary act or appreciate its effect at the time he executed the testament here. Also, the testimony of Ms. Brown did not support a finding of any such incapacity.
Doctor Gray Hilsman is opponent’s most favorable witness. However, the trial court did not rely upon Doctor Hilsman’s opinion, indicating that it was not satisfied that his opinion had a sufficient basis to support it. The trial court’s reasonable evaluations of credibility should not be disturbed on appeal absent clear error. We cannot conclude from the record that the trial judge was clearly erroneous in his evaluation of Doctor Hilsman’s testimony.
The trial court not only concluded that Mrs. Gallagher failed to meet her burden of proving Mr. Launius’ unsoundness of mind, it also concluded that the preponderance had shown that Mr. Launius was of sound mind at the time he executed his testament. There is ample evidence in the record to support this conclusion also. Mr. Paul Byrne, a geologist and independent oil operator, had engaged in business transactions with Mr. Launius. Mr. Bryne testified that Mr. Launius had continued to engage in his business operations through 1983, including the time when he made his testament. Mr. Bryne testified further that Mr. Launius had conducted negotiations for oil leases with landowners around that time. He continued stating that he never noticed any mental or physical impairments in Mr. Launius in January, 1983, which would render him incapable of carrying out his business responsibilities.
Mr. Dale H. McKidden, attorney for Mr. Launius, testified by deposition regarding the making of Mr. Launius’ testament. Mr. McKidden stated that after general discussions concerning executing a will over a two month period, Mr. Launius came into his office at which time he drew up a rough draft of a testament at Mr. Launius’ direction. Mr. McKidden further testified that Mr. Launius returned the next day, after having kept a copy of the rough draft for review overnight, and executed the testament in final form. Mr. McKidden testified that Mr. Launius did not exhibit any signs of mental deficiency or intoxication, at the time he executed the testament.
The deposition testimony of Dr. Bryan Barksdale was also supportive of a finding that Mr. Lyons was not of unsound mind at the time he executed this testament. Doctor Barksdale treated Mr. Launius just pri- or to his death. Doctor Barksdale first saw Mr. Launius on June 21, 1983, approximately five months after he executed the testament. Doctor Barksdale testified that during the period in which he treated Mr. Launius he never showed any signs of mental incapacity. In fact, Doctor Barksdale characterized Mr. Launius as being alert and in control of his mental faculties.
The testimony of Mr. Bryne, Mr. McKid-den, and Doctor Barksdale clearly portray Mr. Launius as being a man capable of understanding the testamentary act and its effects.
From our review of the record, with the pertinent testimony summarized above, we cannot conclude that the trial court’s finding that Mrs. Gallagher failed to carry her burden of proving by clear and convincing evidence that Mr. Launius was of unsound mind at the time he executed his testament was manifestly erroneous. Accordingly, for the above and foregoing reasons, the judgment of the trial court is affirmed.
*687 Costs of this appeal are assessed to Mrs. Gallagher.
AFFIRMED.